# Illinois Official Reports

## Appellate Court

---

### *Connour v. Grau*, 2015 IL App (4th) 130746

---

| | |
|---|---|
| Appellate Court Caption | SCOTT CONNOUR, Plaintiff-Appellee, v. HIRAM GRAU, Director of State Police; and MICHAEL W. VORREYER, FOID Enforcement Manager of The Department of State Police, Defendants-Appellants, and THE McLEAN COUNTY STATE'S ATTORNEY, Defendant. |
| District & No. | Fourth District<br>Docket No. 4-13-0746 |
| Filed<br>Rehearing denied | July 7, 2015<br>July 31, 2015 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 11-MR-148; the Hon. Rebecca Simmons Foley, Judge, presiding. |
| Judgment | Affirmed as modified and remanded with directions. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Brett E. Legner (argued), Assistant Attorney General, of counsel), for appellants.<br><br>Todd A. Roseberry (argued) and John P. Schwulst, both of Schwulst & Roseberry, P.C., of Bloomington, for appellee. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Presiding Justice Pope and Justice Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1     In March 1999, plaintiff, Scott Connour, was convicted of misdemeanor domestic battery and sentenced to a one-year term of conditional discharge. In February 2011, plaintiff applied for a card under the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/1 to 16-3 (West 2010)). In March 2011, the Illinois State Police (hereinafter, Department) denied plaintiff's application, citing a provision of the federal Gun Control Act of 1968 (Gun Control Act) (18 U.S.C. § 922(g)(9) (2006)) that made it unlawful for a person convicted of misdemeanor domestic violence to possess a firearm. In May 2011, plaintiff filed a petition in the trial court for the issuance of a FOID card pursuant to section 10 of the FOID Act (430 ILCS 65/10 (West 2010)). In July 2011, the court granted plaintiff's petition and ordered the Department to issue plaintiff a FOID card. In August 2011, the Department issued plaintiff a FOID card that bore the following language: "WARNING: The individual shown on this card *is prohibited from possession firearms or ammunition* under Federal Law 18 USC 44 922 g [*sic*]." (Emphasis in original.)

¶ 2     In May 2012, plaintiff filed a petition for writ of *mandamus* against the Department–specifically, Hiram Grau (director of the Department) and Michael W. Vorreyer (FOID enforcement manager of the Department)–seeking an order directing the Department to issue plaintiff a valid FOID card "without any qualifiers thereon prohibiting [its] full and lawful use." In August 2013, following a hearing, the trial court granted plaintiff's *mandamus* petition and ordered the Department to (1) issue plaintiff a FOID card without any qualifying language and (2) "report to the appropriate federal agency that [plaintiff's] rights have been restored to possess firearms and ammunition."

¶ 3     The Department appeals, arguing only that the trial court erred by ordering it to report to the appropriate federal agency that plaintiff's right to possess firearms and ammunition had been restored. Although we affirm the court's judgment, we modify it and remand with directions that the court modify its order by directing the Department to report to federal authorities that plaintiff's rights to possess firearms and ammunition have been restored *as a matter of Illinois law*.

## I. BACKGROUND

¶ 5     The following facts were gleaned from the parties' pleadings, exhibits, evidence presented at the hearings, and the trial court's orders.

¶ 6     Upon his March 1999 conviction for misdemeanor domestic battery, plaintiff lost his right to possess a firearm under Illinois law (430 ILCS 65/8(l) (West 1998)) and federal law (18 U.S.C. § 922(g)(9) (1994)). In May 2011, plaintiff initiated proceedings under section 10 of the FOID Act, which at that time provided, in pertinent part, as follows:

> "(a) Whenever an application for a [FOID] Card is denied, *** the aggrieved party may petition the circuit court in writing in the county of his or her residence for a hearing upon such denial, revocation, or seizure.
>
>   (b) At least 30 days before any hearing in the circuit court, the petitioner shall serve the relevant State's Attorney with a copy of the petition. The State's Attorney may object to the petition and present evidence. At the hearing the court shall determine whether substantial justice has been done. Should the court determine that substantial

justice has not been done, the court shall issue an order directing the Department of State Police to issue a Card.

(c) Any person prohibited from *** acquiring a [FOID] Card under Section 8 of this Act may *** petition the circuit court in the county where the petitioner resides, *** requesting relief from such prohibition[,] and the *** court may grant such relief if it is established by the applicant to the court's *** satisfaction that:

(0.05) *** the State's Attorney has been served with a written copy of the petition at least 30 days before any such hearing in the circuit court and at the hearing the State's Attorney was afforded an opportunity to present evidence and object to the petition;

(1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a [FOID] Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction;

(2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety; and

(3) granting relief would not be contrary to the public interest." 430 ILCS 65/10(a)-(c) (West 2010).

¶ 7 The McLean County State's Attorney, after receiving notice of plaintiff's petition pursuant to section 10(b) of the FOID Act, raised no objection to plaintiff's petition. In July 2011, following a hearing, the trial court found "that [plaintiff] will not be likely to act in a manner dangerous to public safety and granting a FOID card to [plaintiff] would not be contrary to the public interest." Accordingly, the court granted plaintiff's petition, ordering that "the disability preventing [plaintiff] from obtaining and possess[ing] a FOID card, specifically relating to the prior conviction [for domestic battery], is hereby remove[d] and the [Department] shall issue a FOID card to [plaintiff]."

¶ 8 As already stated, in August 2011, the Department issued plaintiff a FOID card that bore the following language: "WARNING: The individual shown on this card *is prohibited from possession firearms or ammunition* under Federal Law 18 USC 44 922 g [*sic*]." (Emphasis in original.) In the months that followed, plaintiff and his attorneys attempted, unsuccessfully, to obtain from the Department a FOID card that did not contain qualifying language.

¶ 9 In May 2012, plaintiff filed a petition for writ of *mandamus*, alleging that defendants were obligated under the trial court's July 2011 order and the FOID Act to issue plaintiff a FOID card without qualifying language. In his prayer for relief, plaintiff sought an order "directing [defendants] to issue [plaintiff] a valid [FOID card] without any qualifiers thereon prohibiting [its] full and lawful use ***."

¶ 10 In July 2012, defendants filed a motion to dismiss plaintiff's *mandamus* petition pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)), arguing that (1) placing the warning label on plaintiff's FOID card was within the Department's discretionary powers under the FOID Act and (2) because plaintiff was prohibited from possessing firearms under the federal Gun Control Act, (a) he had no clear right to a FOID card indicating he could legally possess firearms and (b) defendants had no clear duty to issue such a card.

¶ 11 Following a May 2013 hearing, the trial court denied defendants' motion to dismiss and granted plaintiff's *mandamus* petition. The court explained its reasoning, as follows:

"The court does find that in July of 2011, [plaintiff's] rights were restored, the disability was removed, and it was the intent of the court's order that the [Department] issue a valid FOID card without the language contained on the card that he currently has which prevents him from using it. It makes no sense that the court would order that they just issue a card. It was the intent of the court that a card be issued that he could actually and validly use."

At the conclusion of the May 2013 hearing, the court directed plaintiff to draft a written order embodying the court's judgment and submit the proposed order to the Department for approval.

¶ 12 In July 2013, before the parties reached an agreement as to the appropriate language to include in the order, the Department issued plaintiff a FOID card that contained no qualifying language. Later that month, plaintiff went to a sporting-goods store to purchase a firearm using the newly issued FOID card. At the store, the owner–who submitted an affidavit to the trial court–used the seven-digit number contained on the FOID card to run a background check on plaintiff to "verify his eligibility to purchase a firearm." According to the store owner's affidavit, "[u]pon completion of the background check[,] the FOID card was denied."

¶ 13 At an August 1, 2013, hearing, plaintiff contended that the July 2013 FOID card the Department issued to him was invalid because the Department had not reported to federal authorities that plaintiff's rights had been restored. Plaintiff paraphrased the following provision of the Gun Control Act:

"A person shall not be considered to have been convicted of [domestic battery] for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(33)(B)(ii) (2012).

¶ 14 Citing section 921(a)(33)(B)(ii), plaintiff contended that because the trial court reinstated his right to hold a FOID card pursuant to section 10 of the FOID Act, plaintiff's "civil rights" had been "restored" within the meaning of the Gun Control Act. According to plaintiff, the Department was responsible for reporting to the federal database (known as the National Instant Criminal Background Check System, or "NICS") the identities of individuals whose prior convictions bar them from possessing a firearm under federal law. Plaintiff argued that because the NICS database still considered him barred from possessing a firearm due to his previous domestic battery conviction, the FOID card the Department issued in July 2013 was essentially worthless. Even with the qualifying language omitted from the FOID card, plaintiff could still not pass a federal background check due to the Department's failure to report to the NICS database that his civil rights had been restored.

¶ 15 At the conclusion of the August 1, 2013, hearing, the trial court entered a written order directing the Department to issue plaintiff, by August 22, 2013, "an unrestricted, valid[,] and useable [FOID card] without any restrictions not authorized by Illinois law." The following statement, written by hand, appeared at the bottom of the court's order: "[The Department]

shall report to the appropriate federal agency that [plaintiff's] rights have been restored to possess firearms and ammunition."

¶ 16   This appeal followed.

## II. ANALYSIS

¶ 18   On appeal, the Department argues only that the trial court erred by ordering it to report to the appropriate federal agency that plaintiff's right to possess firearms and ammunition had been restored. (The Department does not contest the court's finding that plaintiff was entitled to a valid FOID card as a matter of Illinois law.) Because we conclude that the court's restoration of plaintiff's right to a FOID card under the FOID Act did not automatically remove plaintiff's disability to possessing a firearm under the federal Gun Control Act, we remand with directions that the court clarify its order by directing the Department to report to federal authorities that plaintiff's rights to possess firearms and ammunition have been restored *as a matter of Illinois law*.

### A. The Standard of Review

¶ 20   "In order to obtain a *mandamus* remedy, the plaintiff must establish a clear right to the requested relief, a clear duty of the public officer to act, and clear authority of the public officer to comply with the order." *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17, 989 N.E.2d 165. "A writ of *mandamus* is appropriate when used to compel compliance with mandatory legal standards but not when the act in question involves the exercise of a public officer's discretion." *Id*.

¶ 21   In this case, whether plaintiff was entitled to the *mandamus* relief at issue–namely, the trial court's order directing the Department to inform federal authorities that plaintiff's right to possess firearms and ammunition had been restored–depends upon the proper interpretation of the Gun Control Act. The interpretation of a statute is a question of law, which we review *de novo*. *People v. Simpson*, 2015 IL 116512, ¶ 29, 25 N.E.3d 601.

### B. The Gun Control Act

¶ 23   The Gun Control Act makes it unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence" to "possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(9) (2012). However, "[a] person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned *or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)* unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." (Emphasis added.) 18 U.S.C. § 921(a)(33)(B)(ii) (2012).

¶ 24   In this case, plaintiff argues that the Gun Control Act does not prohibit him from possessing a firearm because his civil rights were restored when the trial court granted his petition for a FOID card under section 10 of the FOID Act. However, the rights restored under section 10 of the FOID Act are not necessarily the type of "civil rights" referred to in section

921(a)(33)(B)(ii). In *Logan v. United States*, 552 U.S. 23, 28 (2007), the Supreme Court interpreted section 921(a)(20) of the Gun Control Act (18 U.S.C. § 921(a)(20) (2006))–which used the same "civil rights restored" language as section 921(a)(33)(B)(ii)–and stated, "While § 921(a)(20) does not define the term 'civil rights,' courts have held, and petitioner agrees, that the civil rights relevant under [§ 921(a)(20)] are the rights to vote, hold office, and serve on a jury." It appears this statement was *dicta* because the petitioner in *Logan* conceded that "civil rights" under the Gun Control Act means only those three core civil rights. It remains an open question whether the restoration of the right to keep arms as a matter of state law constitutes the restoration of civil rights within the meaning of the Gun Control Act.

¶ 25    The Supreme Court in *Logan* also held that a person who *retains* his civil rights upon conviction cannot have his civil rights *restored*. *Logan*, 552 U.S. at 36-37 ("Congress explicitly distinguished between 'restored' and 'retained' in §921(a)(33)(B)(ii)."). In this case, because plaintiff did not lose his core civil rights when he was convicted of domestic battery, he never had his core civil rights restored within the meaning of the Gun Control Act.

¶ 26    After the trial court entered its final judgment in this case, the Illinois Supreme Court decided *Coram v. State of Illinois*, 2013 IL 113867, 996 N.E.2d 1057, which controls the outcome of this appeal. In *Coram*, two concurring justices and two dissenting justices–a majority of the court–agreed that the restoration of FOID card rights under section 10 of the FOID Act does not automatically remove the federal disability to the possession of firearms under the federal Gun Control Act. See *id.* ¶ 103, 996 N.E.2d 1057 (Burke, J., specially concurring, joined by Freeman, J.) ("The only thing that can be established with finality under a state regulatory scheme such as the FOID Card Act is whether or not an applicant is compliant with state law."); *id.* ¶ 118, 996 N.E.2d 1057 (Theis, J., dissenting, joined by Garman, J.) ("A section 10 hearing cannot make it lawful for Coram to acquire or possess a firearm that he concedes he is prohibited from possessing under federal law."); see also *People v. Lampitok*, 207 Ill. 2d 231, 238, 798 N.E.2d 91, 97 (2003) ("The concurring and dissenting justices agree on the resolution of some issues so that they become the holding of the appellate court even though they are not found in the principal order."). In other words, a majority of the supreme court in *Coram* held that when an Illinois state court restores a person's right to possess firearms and ammunition *for purposes of Illinois law* pursuant to section 10 of the FOID Act, such restoration does not automatically restore the person's right to possess firearms and ammunition under the federal Gun Control Act.

¶ 27    In this case, plaintiff's principal argument–that the trial court's restoration of his firearm rights under section 10 of the FOID Act removed his federal disability to firearm possession–rests on the three-justice plurality's holding in *Coram*. See *Coram*, 2013 IL 113867, ¶ 69, 996 N.E.2d 1057 ("Given the broad powers Congress has given the states to restore rights and grant relief from federally imposed firearms disabilities, we believe the power to grant relief, or restore rights, to those who have lost them as a result of state misdemeanor convictions is necessarily implied."). However, a majority of the justices rejected that conclusion. See *id.* ¶ 105, 996 N.E.2d 1057 (Burke, J., specially concurring, joined by Freeman, J.) ("Although this result answers the question of whether Coram has established the right to possess a firearm as a matter of state law, it remains an open question as to whether Coram is prohibited from possessing a firearm as a matter of federal law. However, that is a matter to be resolved between Coram and the federal authorities."); *id.* ¶ 118, 996

N.E.2d 1057 (Theis, J., dissenting, joined by Garman, J.) ("[N]othing in the FOID Act relieves Coram of the disability imposed under the federal Gun Control Act ***.").

¶ 28 Because the trial court's restoration of plaintiff's right to a FOID card under section 10 of the FOID Act did not automatically remove plaintiff's federal firearm disability under the Gun Control Act, plaintiff had no clear right to have federal authorities informed–and the Department had no clear duty to inform federal authorities–that plaintiff's "rights have been restored to possess firearms and ammunition." Instead, a more accurate message would have been that plaintiff's rights to possess firearms and ammunition have been restored *as a matter of Illinois law*. Accordingly, we affirm the court's judgment as modified and remand with directions that the court modify its order by directing the Department to report to federal authorities that plaintiff's rights to possess firearms and ammunition have been restored *as a matter of Illinois law*. In so doing, we recognize that plaintiff's FOID card, even if valid under Illinois law, may be worthless to plaintiff so long as his 1999 misdemeanor conviction for domestic battery still prevents him from passing a federal background check or otherwise legally possessing a firearm under federal law. However, as four justices of the supreme court concluded in *Coram*, that is not a matter to be resolved through state proceedings.

¶ 29                                    III. CONCLUSION

¶ 30 For the reasons stated, we affirm the trial court's judgment as modified and remand with directions.

¶ 31 Affirmed as modified and remanded with directions.