# Illinois Official Reports

## Appellate Court

***O'Neill v. Director of the Illinois Department of State Police*,
2015 IL App (3d) 140011**

| | |
|---|---|
| Appellate Court Caption | MICHAEL R. O'NEILL, Petitioner-Appellee, v. DIRECTOR OF THE ILLINOIS DEPARTMENT OF STATE POLICE, Respondent (The Department of State Police, Intervenor-Appellant). |
| District & No. | Third District<br>Docket No. 3-14-0011 |
| Filed | March 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Marshall County, No. 13-MR-10; the Hon. Scott A. Shore, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Timothy K. McPike, Assistant Attorney General, of counsel), for appellant.<br><br>No brief filed for appellee. |

Panel                    JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices Holdridge and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    The Illinois Department of State Police (Department) revoked petitioner Michael O'Neill's firearm owner's identification (FOID) card. The Department sent O'Neill a letter stating that it revoked his FOID card based on his conviction of battery, resulting from an incident of domestic violence.

¶ 2    O'Neill petitioned the circuit court, which ordered the Department to reinstate O'Neill's FOID card. The Department intervened and filed a motion to vacate the court's order, which the court denied.

¶ 3    The Department appeals, arguing that the circuit court lacked jurisdiction. Alternatively, the Department argues that O'Neill is not entitled to relief due to the fact that federal law prohibits him from possessing firearms. O'Neill has not filed an appellee's brief. For the following reasons, we reverse.

¶ 4                          BACKGROUND

¶ 5    In 1999, O'Neill pled guilty to battery (720 ILCS 5/12-3 (West 1998)) and reckless conduct (720 ILCS 5/12-5 (West 1998)) after being arrested for an incident involving domestic violence; O'Neill punched his son.    The court ordered O'Neill to pay a fine and sentenced him to 24 months' probation. The State's Attorney declined to prosecute charges against O'Neill in 1996 for domestic battery and in 1988 for battery.

¶ 6    The Department sent O'Neill a letter on May 31, 2013, stating that the Department revoked his FOID card due to his 1999 convictions for battery and reckless conduct resulting from an incident of domestic violence. The letter stated, "[t]his action is in accordance with the Federal Gun Control Act of 1968, 18 U.S.C. 922(g)(9) and the State FOID Act, 430 ILCS 65/8(1). These acts make it unlawful for any person convicted of a 'misdemeanor crime of domestic violence' to ship, transport, possess or receive firearms or ammunition." The letter further stated, "the Director of State Police cannot grant relief for denials, based on particular listed offenses. Since your conviction is one of those identified offenses, the Illinois State Police is unable to consider an appeal of your FOID card revocation. The FOID Act, 430 ILCS 65/10(c)(1), does provide that the aggrieved party may petition in writing, the circuit court in the county of residence."

¶ 7    The Department sent O'Neill a second letter on July 12, 2013, providing the same information as the first letter. Additionally, the second letter directed O'Neill to return any FOID cards in his possession to the Department.

¶ 8    O'Neill filed his petition in the circuit court seeking reinstatement of his FOID card pursuant to section 10(b) of the Firearm Owners Identification Card Act (Act) (430 ILCS 65/10(b) (West Supp. 2013)). The case was erroneously captioned as "O'Neill v. Director of the Illinois Department of State Police." O'Neill never served the Department or the Director

with the summons and petition; he served the Marshall County State's Attorney pursuant to sections 10(b) and 10(c)(0.05) of the Act. The court ordered the Department to reinstate O'Neill's FOID card. The court found that O'Neill had not committed a forcible felony within 20 years and was not likely to act in a manner dangerous to public safety. Further, the court found that granting relief was not contrary to the public interest.

¶ 9       The Department filed motions to intervene and vacate the court's order. The Department argued that the circuit court lacked subject matter jurisdiction to consider O'Neill's petition under sections 10(a) and 10(c) of the Act. Specifically, the Department alleged that: it revoked O'Neill's FOID card based on his battery conviction; the Director held exclusive jurisdiction under section 10(a) of the Act; O'Neill failed to exhaust his administrative remedies; section 922(g)(9) of the Federal Gun Control Act of 1968 (Gun Control Act) (18 U.S.C. § 922(g)(9) (2006)) prohibits O'Neill from possessing firearms because his conviction amounted to a misdemeanor crime of domestic violence under section 921(a)(33)(A) of the Gun Control Act; and section 10(c)(4) of the Act prohibits the court from granting relief where doing so is contrary to federal law.

¶ 10      O'Neill responded, conceding that his battery conviction constituted a misdemeanor crime of domestic violence under the Gun Control Act. He argued that the Department surrendered and waived the issue of subject matter jurisdiction. O'Neill also argued that the Department denied him the ability to directly appeal to it and conferred jurisdiction upon the circuit court; the Department's letters stated that he must petition the circuit court, and the Department adopted a more broad definition of the Gun Control Act in evaluating the nature of the offense. He further argued that the plurality decision in *Coram v. State of Illinois*, 2013 IL 113867, ¶ 75, is persuasive where three justices found that a circuit court can remove "the federal firearm disability" by granting a party's section 10 petition.

¶ 11      The trial court granted the Department's motion to intervene and denied its motion to vacate the court order requiring the Department to issue O'Neill a FOID card.

¶ 12      The Department appeals. We reverse.

¶ 13                                    ANALYSIS
¶ 14                          I. Subject Matter Jurisdiction
¶ 15      The Department argues that the trial court lacked subject matter jurisdiction; the Department revoked O'Neill's FOID card based on O'Neill's conviction for battery, which is not an enumerated offense providing jurisdiction to the trial court.

¶ 16      The issue of subject matter jurisdiction cannot be waived. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 333-34 (2002). Therefore, a party can raise the issue at any time. *Id.* "We review *de novo* whether the circuit court properly exercised jurisdiction." *Schlosser v. State*, 2012 IL App (3d) 110115, ¶ 18; *Miller v. Department of State Police*, 2014 IL App (5th) 130144, ¶ 8.

¶ 17      There is no dispute that section 10(a) of the Act governs jurisdiction of appeals for relief from firearm prohibition. The statute, in relevant part, states:

> "(a) Whenever an application for a Firearm Owner's Identification Card is denied, *** or whenever such a Card is revoked or seized as provided for in Section 8 of this Act, the aggrieved party may appeal to the Director of State Police for a hearing upon such denial, revocation or seizure, unless the denial, revocation, or seizure was based

upon a forcible felony, stalking, aggravated stalking, *domestic battery*, any violation of the Illinois Controlled Substances Act, the Methamphetamine Control and Community Protection Act, or the Cannabis Control Act that is classified as a Class 2 or greater felony, any felony violation of Article 24 of the Criminal Code of 1961 or the Criminal Code of 2012, or any adjudication as a delinquent minor for the commission of an offense that if committed by an adult would be a felony, in which case the aggrieved party may petition the circuit court in writing in the county of his or her residence for a hearing upon such denial, revocation, or seizure." (Emphasis added.) 430 ILCS 65/10(a) (West Supp. 2013).

¶ 18    Judicial review of final administrative decisions is also available under section 11(a), which states:

"(a) All final administrative decisions of the Department under this Act, except final administrative decisions of the Director of State Police to deny a person's application for relief under subsection (f) of Section 10 of this Act, shall be subject to judicial review under the provisions of the Administrative Review Law ***." 430 ILCS 65/11(a) (West 2012).

¶ 19    Here, the revocation of O'Neill's FOID card was based on his battery conviction arising out of a domestic violence incident. Section 10(a) of the Act requires only that the revocation be *based on* one of the enumerated defenses; a conviction of an enumerated offense is not required. *Miller*, 2014 IL App (5th) 130144, ¶ 19. Under the plain language of the Act, O'Neill could not appeal his revocation to the director. Furthermore, the letter constituted a final administrative decision. The letter explicitly stated that the Director of State Police could not grant relief for denials based on particular offenses; O'Neill's conviction constituted one of those offenses. Further, the letter directed O'Neill to petition the circuit court to appeal the revocation of his card. "It is one of the oldest and perhaps the wisest maxims of equity that the law will not require a person to do a useless act." *Rock Island Y.W.C.A. v. Bestor*, 48 Ill. App. 3d 761, 765 (1977). The Department informed O'Neill that it would not grant relief; therefore, it would have been useless for O'Neill to appeal to the Department. The Department's jurisdiction argument is simply disingenuous. The circuit court properly exercised jurisdiction.

¶ 20                    II. Federal Law Prohibits Petitioner From Possessing Firearms

¶ 21    Alternatively, the Department argues that the court could not grant relief due to the fact that federal law prohibits O'Neill from possessing a firearm. The Department is not arguing that the trial court's findings are against the manifest weight of the evidence. Instead, the Department argues that federal law prohibits O'Neill from possessing a gun and, therefore, he is not entitled to reinstatement of his FOID card under state law. We review questions of law *de novo*. *People v. Belk*, 203 Ill. 2d 187, 192 (2003) (citing *People v. Richardson*, 196 Ill. 2d 225, 228 (2001)).

¶ 22    The Department can revoke a FOID card based on various grounds, including where "[a] person who is prohibited from acquiring or possessing firearms or firearm ammunition by any Illinois State statute or by federal law." 430 ILCS 65/8(n) (West Supp. 2013).

¶ 23    The Gun Control Act makes it unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or

foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(9) (2006).

¶ 24    The Gun Control Act defines " 'misdemeanor crime of domestic violence' " as:

"(i) is a misdemeanor under Federal, State, or Tribal law; and

(ii) has, as an element, the use or attempted use of physicalforce, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of thevictim, by a person with whom the victim shares a child incommon, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33) (2006).

Below, O'Neill conceded that his conviction constituted a misdemeanor crime of domestic violence under the Gun Control Act. O'Neill was convicted of simple battery after he punched his son. In *United States v. Hayes*, 555 U.S. 415, 426 (2009), the United States Supreme Court addressed the issue of whether the definition of "a misdemeanor crime of domestic violence" covers situations whenever the battered victim was in a domestic relationship with the offender. In that case, the offender was convicted of simple battery and the victim was his "then-wife" and cohabited with the offender as a spouse. *Id.* at 418. The court held that although a domestic relationship must be established, a domestic relationship need not be an element to the predicate offense. *Id.* Instead, section 921(a)(33) requires that the predicate offense have an *element* of the use or attempted use of force or the threatened use of a deadly weapon. *Id.* The Court further stated that "[c]onstruing § 922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense) would frustrate Congress' manifest purpose." *Id.* at 426-27. Based on O'Neill's confession and the holding in *Hayes*, federal law prohibits O'Neill from possessing a gun. O'Neill punched his son; thus, establishing the domestic relationship. To affirm the circuit court's judgment, we would have to find that circuit courts have the ability to remove federal disability under the relief procedures of the Act.

¶ 25    Section 10(c) of the Act governs relief procedures for whenever an application for a FOID card is denied or whenever such card is revoked. The provision, in relevant part, states:

"[T]he Director or court [whichever is applicable in accordance with section 10(a)] may grant such relief if it is established by the applicant to the court's or Director's satisfaction that:

***

(1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a Firearm Owner's Identification Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction;

(2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety;

(3) granting relief would not be contrary to the public interest; and

- 5 -

(4) granting relief would not be contrary to federal law." 430 ILCS 65/10(c) (West Supp. 2013).

The General Assembly added section 10(c)(4) when it revised the Act in 2013. Pub. Act 97-1150, § 545 (eff. Jan. 25, 2013); see *Coram v. State of Illinois*, 2013 IL 113867, ¶ 75.

¶ 26    It is unclear whether the circuit court has the ability to remove a federal disability. Our supreme court has not directly addressed the issue–therefore, we are left to read the tea leaves based on what the supreme court has said on the issue. In *Coram*, a plurality decision, our supreme court, in *dicta*, addressed the issue of whether the circuit court has the ability to remove a federal firearm disability under the relief procedures enumerated in section 10. Even though in *Coram* the current version of the Act was not applicable, the case provides insight as to the circuit court's ability to remove a federal impediment under the 2013 amendments. *Coram*, 2013 IL 113867, ¶ 75.

¶ 27    Although purely *dicta* and not binding, four justices in *Coram* found that the state court cannot remove a federal impediment pursuant to the 2013 amendments to the Act. The special concurrence stated that nothing in the amendments rebuts that presumption and such amendments "make clear that a circuit court no longer has the authority to make findings or grant relief under section 10 if the court concludes that the applicant would be in violation of federal law if he or she were to possess a firearm." *Coram*, 2013 IL 113867, ¶ 101 (Burke, J., specially concurring, joined by Freeman, J.). The dissent stated that the 2013 amendments make it "abundantly clear the legislative intent to incorporate by reference the federal prohibitions under section 922(g)(9)." *Id.* ¶ 123 (Theis, J., dissenting, joined by Garman, J.). "[U]nder the amended statute, the relief procedures under section 10 cannot remove a federal firearms disability." *Id.* ¶ 124.

¶ 28    Three justices in the main opinion found that the new amendments did not prohibit circuit courts from removing the federal firearm disability. *Id.* ¶ 75 (majority opinion). While we may agree with the main opinion and there are certainly arguments to be made in support of affirming the trial court, O'Neill did not participate in this appeal, and we are not in a position to make such arguments for him.

¶ 29    In light of recent second amendment decisions, we see a serious constitutional issue with the perpetual ban on the possession of firearms based upon a misdemeanor crime of domestic violence. *Coram*, 2013 IL 113867; *Schrader v. Holder*, 704 F.3d 980 (D.C. Cir. 2013). Here, O'Neill punched his son in the mouth. Had he acted in the same manner toward a stranger, he would have faced a five-year prohibition from possessing a firearm.

¶ 30    Those prohibited from possessing a gun under federal law can seek relief pursuant to section 925(c) of the Gun Control Act, which provides relief procedures from federal disabilities and which states:

> "A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Attorney General may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. Any person whose application for relief from disabilities is denied by the Attorney General may file a

petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice." 18 U.S.C. § 925(c) (2006).

¶ 31 O'Neill conceded that his conviction constituted a misdemeanor crime of domestic violence. The Act prohibits the court from granting relief where doing so would be contrary to federal law. *Coram* suggests that four justices would find that the circuit court cannot remove a federal disability. Given the state of the law and the fact that O'Neill did not participate, we have no choice but to reverse. We make it clear that we are not reversing the court's findings, which as stated above are the same findings that the Attorney General is required to make under section 925(c), that: O'Neill had not committed a forcible felony within 20 years; that he was not likely to act in a manner dangerous to public safety; and that granting relief was not contrary to the public interest. We are only reversing the court's order requiring the Department to reinstate O'Neill's FOID card.

¶ 32                                                   CONCLUSION

¶ 33 For the foregoing reasons, the judgment of the circuit court of Marshall County is reversed.

¶ 34 Reversed.