# Illinois Official Reports

## Appellate Court

---

***Willis v. Macon County State's Attorney*, 2016 IL App (4th) 150480**

---

| | |
|---|---|
| Appellate Court Caption | TERRY L. WILLIS, Petitioner-Appellee, v. THE MACON COUNTY STATE'S ATTORNEY, Respondent (The Department of State Police, Intervenor-Appellant). |
| District & No. | Fourth District<br>Docket No. 4-15-0480 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | October 7, 2016<br><br>December 5, 2016<br>December 5, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 14-MR-405; the Hon. Albert G. Webber, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Brett E. Legner (argued), Assistant Attorney General, of counsel), for appellant.<br><br>John L. Davis (argued), of Moore, Susler, McNutt & Wrigley, of Decatur, for appellee. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices Harris and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1    Intervenor, the Department of State Police (State Police), appeals the Macon County circuit court's May 20, 2015, order (1) finding Leo Schmitz, in his official capacity as Director of State Police (Director), in contempt of court; (2) fining the Director daily until the contempt is purged, and (3) ordering the State Police to pay $5996.50 in attorney fees for petitioner, Terry L. Willis. On appeal, the State Police assert the court's contempt order should be reversed because (1) the Director did not violate any court order and (2) the State Police were required by law to include federal prohibitors on petitioner's firearm owner's identification (FOID) card. We reverse.

¶ 2                              I. BACKGROUND

¶ 3    In April 2014, petitioner filed a petition against respondent, the Macon County State's Attorney, appealing the April 8, 2014, revocation of his FOID card by the State Police. Respondent objected to the petition, asserting petitioner was prohibited by federal law from possessing a firearm due to his 1978 conviction for battery (Ill. Rev. Stat. 1975, ch. 38, § 12-3(a)(1)) against Sheryl E. Willis (People v. Willis, No. 77-CM-1731 (Cir. Ct. Macon Co.)). The State's Attorney attached documents from the court file for case No. 77-CM-1731, including the information and docket sheet. After a July 2014 hearing, the circuit court granted petitioner's petition, finding, *inter alia*, (1) petitioner had not been convicted of a misdemeanor crime of domestic violence or battery within the last 20 years of petitioner's application for a FOID card and (2) the issuance of a FOID card to petitioner would not be contrary to federal law. The court's written order stated that, "pursuant to 403 ILCS 65/10, the Illinois Department of State Police is directed to issue Terry L. Willis a Firearm Owner's Identification card, forthwith."

¶ 4    In August 2014, the State Police filed a petition to intervene and a motion to vacate the circuit court's judgment. The State Police argued petitioner was prohibited from having a FOID card under section 10(c)(4) of the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/10(c)(4) (West 2014)) because petitioner was prohibited from possessing a firearm and ammunition under section 922(g)(9) of the Gun Control Act of 1968 (18 U.S.C. § 922(g)(9) (2012)), due to his 1978 battery conviction. In September 2014, petitioner filed a rule to show cause, seeking to have the then Director Hiram Grau held in contempt for not issuing him a FOID card. After a joint October 2014 hearing, the court allowed the State Police's petition to intervene, denied the State Police's motion to vacate, and denied without prejudice petitioner's rule to show cause.

¶ 5    In November 2014, petitioner filed a first amended petition for rule to show cause, seeking to hold the Director in contempt because the State Police issued him a FOID card and then declared the card invalid. The State Police's response indicated it had issued petitioner a FOID card and attached a copy of the letter. In the letter, the State Police indicated the FOID card did not grant him immunity from prosecution under federal law and encouraged him to seek any necessary declaration from the federal government regarding his rights and prohibitions under federal law. The State Police also attached a Law Enforcement Agencies Data System (LEADS) report showing petitioner's FOID card was valid.

¶ 6    On November 24, 2014, the circuit court commenced a hearing on petitioner's first amended petition for rule to show cause. Petitioner testified that, when the State Police

revoked his FOID card, he transferred his weapons to another person. After the State Police issued him a FOID card, he sought to have the weapons transferred back to him. To do so, he had to obtain a number from the State Police to put on the receipt. When petitioner attempted to get the number, he was told his FOID card was invalid. Petitioner's exhibit No. 1 was a November 11, 2014, computer printout from the State Police website for person to person firearm transfers, which showed petitioner's status as "invalid." Petitioner's exhibit No. 2 was a November 24, 2014, printout from the same website that showed petitioner's status as "pending." The State Police presented the affidavit of Jessica Trame, bureau chief of the State Police firearm services bureau, and a November 21, 2014, LEADS report showing petitioner's FOID card as valid. In her affidavit, Trame stated the State Police issued petitioner a FOID card on November 3, 2014. She also stated the State Police sent petitioner a letter advising him to seek a declaration of his rights from federal authorities, as his criminal record could subject him to arrest for violations of federal law. After the evidence was presented, the parties' arguments turned into a lengthy discussion with the court, and the court found it needed a more complete record to determine whether the Director was in contempt and continued the matter.

¶ 7        On January 20 and February 20, 2015, the court heard more evidence. The State Police presented Trame's testimony. She testified the State Police firearm services bureau was responsible for determining eligibility for FOID cards and overseeing the firearm transfer inquiry program and the concealed carry license program. As a result of those duties, the firearm services bureau is designated as a point of contact with the Federal Bureau of Investigation's (FBI) National Instant Criminal Background Check System (NICS). As a point of contact, the firearm services bureau acts on behalf of the national and state criminal background check systems for the purchase or transfer of firearms or ammunition in Illinois and must determine the eligibility of persons to acquire firearms. In doing so, the firearm services bureau is required to follow federal guidelines and federal prohibitions on firearm possession and must report any denied or prohibited persons to the NICS system. A denied person is one who is prohibited under state or federal law from possessing a firearm. It also enters a special code into the NICS system. The system has separate designators for state prohibitors and federal prohibitors. The firearm services bureau receives specific guidelines from the federal authorities as well as annual training, which includes updates on legal opinions. The federal authorities' guidelines include threats of sanctions for noncompliance, which could include removing the State Police's access to the NICS. The federal authorities audit the State Police's compliance with its directives.

¶ 8        In a 2009 FBI audit, the State Police were found to be noncompliant with the requirement of researching misdemeanor crimes of domestic violence. The State Police are required to obtain information about the crimes and then determine whether the misdemeanor conviction involved a domestic relationship and were not doing so. The State Police made policy changes to research misdemeanor crimes and sanctions were not imposed. Moreover, Trame testified the FBI and the federal Bureau of Alcohol, Tobacco, Firearms and Explosives had reviewed the Illinois Supreme Court's decision in *Coram v. State of Illinois*, 2013 IL 113867, 996 N.E.2d 1057, and told her bureau that neither the Director nor an Illinois court could remove the misdemeanor crime of domestic violence prohibitor. Trame explained such crimes are different from other felonies or other misdemeanors. The federal authorities have recognized the Director providing relief for other felonies or mental health cases but not misdemeanor

crimes of domestic violence. The State Police could be sanctioned if it did not follow the federal guidelines for misdemeanor crimes of domestic violence.

¶ 9 Trame further testified that, when her office received the court order in this case, it was referred to the legal office. The legal office directed the firearm services bureau to code petitioner's FOID card with a federal prohibitor, which would prohibit a firearm transaction. Trame admitted petitioner's FOID card was valid but restricted. The firearm services bureau never ignores a court's order. While the firearm services bureau can insert and remove prohibitors, the federal authorities audit the bureau. Trame acknowledged the firearm services bureau could remove a prohibitor if the governor pardoned someone.

¶ 10 During Trame's testimony, it became apparent Schmitz was the new Director. The circuit court substituted Schmitz for Grau as the Director and the subject of petitioner's rule to show cause.

¶ 11 Petitioner again testified. He explained the facts surrounding his 1978 battery conviction. He stated he was holding his infant daughter at a neighbor's home when his then wife took a pan and hit him upside the head. He sat his daughter down and stood up. His wife drew back and tried to strike him again. He caught the pan with his hand and, in doing so, accidently hit his wife. The altercation stopped after that. About three days after the incident, he was arrested for battery. He pleaded guilty to the charge and was ordered to pay a $25 fine and court costs, which he paid.

¶ 12 After hearing the parties' arguments, the circuit court found Schmitz, in his official capacity as Director, in contempt. In its oral findings, the court began by finding *Coram* was binding in this matter and right on point. Thus, the court believed it had the ability to remove the federal prohibitor and that was what it did with its July 2014 order. The court also noted it believed the State Police had the ability to issue a card and input information into the national system that would permit petitioner to lawfully possess and transfer firearms.

¶ 13 The State Police prematurely filed a motion to reconsider, which the court denied after an April 2015 hearing. In denying the motion to reconsider, the court ordered petitioner to submit an affidavit of attorney fees to be included in the final written order. The State Police filed an objection to petitioner's requests for attorney fees and costs. At a May 2015 hearing, the court addressed the matter of attorney fees. On May 20, 2015, the court entered a written judgment (1) finding Schmitz in contempt, (2) declaring Schmitz could purge the contempt by providing petitioner a properly coded FOID card without any federal prohibitors, (3) fining Schmitz one dollar per day for the first 30 days and $100 per day after 30 days until the contempt is purged, and (4) ordering the State Police to pay petitioner $5996.50 for petitioner's attorney fees.

¶ 14 On June 10, 2015, the State Police filed a timely notice of appeal in compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015). We recognize it was the Director who was found in contempt and note " '[a]ny party to the case may seek appellate review from a final judgment which is adverse to his interests, and whether the party was actually aggrieved does not determine his right to appeal.' " *In re N.C.*, 2013 IL App (3d) 120438, ¶ 13, 993 N.E.2d 134 (quoting *St. Mary of Nazareth Hospital v. Kuczaj*, 174 Ill. App. 3d 268, 270-71, 528 N.E.2d 290, 292 (1988)). Accordingly, this court has jurisdiction of the circuit court's May 20, 2015, contempt judgment under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 15                                  II. ANALYSIS

¶ 16        The State Police assert the circuit court erred by finding Schmitz, its Director, in indirect civil contempt for not issuing an unrestricted FOID court because he did not violate any court order and the State Police were required by federal law to include the federal prohibitor on petitioner's FOID card. Petitioner contends the court's order was proper.

¶ 17        For a finding of contempt, the evidence must show a court order and willful disobedience of that order. *In re M.S.*, 2015 IL App (4th) 140857, ¶ 37, 29 N.E.3d 1241. With civil contempt, the contemnor bears the burden of showing the noncompliance was not willful and contumacious and a valid excuse existed for the failure to follow the court order. *M.S.*, 2015 IL App (4th) 140857, ¶ 37, 29 N.E.3d 1241. Whether an individual is guilty of contempt presents a question of fact for the circuit court, and a reviewing court will not disturb its judgment unless it is against the manifest weight of the evidence or an abuse of discretion. *M.S.*, 2015 IL App (4th) 140857, ¶ 37, 29 N.E.3d 1241. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350, 860 N.E.2d 240, 245 (2006). Moreover, a circuit court "abuses its discretion when its decision is 'fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it.' " *People v. Kladis*, 2011 IL 110920, ¶ 23, 960 N.E.2d 1104 (quoting *People v. Ortega*, 209 Ill. 2d 354, 359, 808 N.E.2d 496, 500-01 (2004)).

¶ 18        In this case, the circuit court's July 2014 order only directed the State Police to issue petitioner a FOID card, and it did so after the court denied its motion to vacate. The court's July 2014 order did not expressly require the State Police to alter its database or issue petitioner a FOID card without federal prohibitors. Moreover, the record does not show the circuit court expressly amended its original order to include the issuance of a FOID card without restrictions when it denied the State Police's motion to vacate and petitioner's motion for rule to show cause. Additionally, petitioner does not cite any authority indicating a person can be found in contempt of court based on violating an implied term of an order. In fact, this court has held a circuit court's restoration of a petitioner's right to a FOID card under section 10 of the FOID Act does not automatically remove plaintiff's federal firearm disability under the Gun Control Act of 1968. *Connour v. Grau*, 2015 IL App (4th) 130746, ¶ 28, 35 N.E.3d 244. Thus, the evidence presented at the contempt hearing does not show a violation of the court's original order.

¶ 19        Even if language in an Illinois Supreme Court case such as *Coram* could add implied terms to a circuit court's order and a person could be found in contempt for violating those implied terms, our supreme court's decision in *Coram* does not control this case. The State Police revoked petitioner's FOID card in April 2014, which was after the 2013 amendments to the FOID Act (430 ILCS 65/0.01 *et seq.* (West 2014)), and thus the 2013 amendments apply to petitioner. See *People v. Frederick*, 2015 IL App (2d) 140540, ¶¶ 22-23, 40 N.E.3d 63 (holding the applicable version of the FOID Act was the one in effect when the State Police revoked the FOID card). The *Coram* decision addressed the version of the FOID Act in effect before the 2013 amendments. See *Coram*, 2013 IL 113867, ¶ 74, 996 N.E.2d 1057. Moreover, while the lead opinion in *Coram* addressed the 2013 amendments (*Coram*, 2013 IL 113867, ¶ 75, 996 N.E.2d 1057), those comments were *dicta* and a majority of the court did not agree with that *dicta*. See *Coram*, 2013 IL 113867, ¶ 101, 996 N.E.2d 1057 (Burke, J., specially concurring, joined by Freeman, J.); *Coram*, 2013 IL 113867, ¶ 124, 996 N.E.2d 1057 (Theis,

J., dissenting, joined by Garman, J.). This court has held that, under the 2013 amendments to the FOID Act, a circuit court is prohibited from granting a petitioner relief under section 10 of the FOID Act when he or she is prohibited from possessing a firearm under federal law. *Walton v. Illinois State Police*, 2015 IL App (4th) 141055, ¶ 23, 39 N.E.3d 1095 (citing 430 ILCS 65/10(b), (c) (West 2014)). The other four appellate court districts have reached the same conclusion. See *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 29, 44 N.E.3d 486; *Frederick*, 2015 IL App (2d) 140540, ¶ 28, 40 N.E.3d 63; *O'Neill v. Director of the Illinois Department of State Police*, 2015 IL App (3d) 140011, ¶ 31, 28 N.E.3d 1020; *Odle v. Department of State Police*, 2015 IL App (5th) 140274, ¶ 33, 43 N.E.3d 1223. Thus, under the 2013 amendments to the FOID Act, a circuit court cannot remove a federal prohibitor.

¶ 20    Accordingly, we find the circuit court's May 2015 contempt judgment was against the manifest weight of the evidence.

¶ 21                                III. CONCLUSION

¶ 22    For the reasons stated, we reverse the Macon County circuit court's May 20, 2015, judgment.

¶ 23    Reversed.