# Illinois Official Reports

## Appellate Court

---

**Evans v. Cook County State's Attorney, 2019 IL App (1st) 182488**

---

| | |
|---|---|
| Appellate Court Caption | ALFRED EVANS JR., Petitioner-Appellant, v. THE COOK COUNTY STATE'S ATTORNEY and THE ILLINOIS STATE POLICE, Respondents-Appellees. |
| District & No. | First District, First Division<br>No. 1-18-2488 |
| Filed | October 28, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-2670; the Hon. Michael Mullen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Alfred Evans Jr., of Bolingbrook, appellant *pro se*.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Katelin B. Buell, Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Griffin concurred in the judgment and opinion.<br>Justice Pierce specially concurred, with opinion. |

¶ 1         Alfred Evans Jr., who has applied for a Firearm Owner's Identification (FOID) card, finds himself caught in a circuitous commingling of Illinois and federal laws that only the General Assembly can untangle.

¶ 2         In the circuit court, Evans contested the Illinois State Police's (ISP) decision to deny his FOID card application. The ISP had cited convictions for two felony drug offenses in 1994 and the related federal statute prohibiting possession of firearms by felons. The Cook County State's Attorney objected on the grounds that issuing Evans a FOID card would violate federal law as well as public interest. The circuit court agreed with the State.

¶ 3         We would be inclined to reverse in light of the uncontradicted evidence that Evans has turned his life around. He has had no contact—conviction, arrest, or otherwise—with the criminal justice system since 2008. He is married and active in raising his three children. He owns a business towing repossessed cars. He seeks a gun only for protection, and there is no evidence in the record that he would use a gun for any other purpose.

¶ 4         But, as we already have said, Evans has been snagged by an interrelated statutory web. The Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/10(c) (West 2018)) requires the circuit court to consider four factors before granting relief, including whether Evans's possession of a gun would violate federal law, and under ordinary circumstances, it would. Federal law prohibits persons convicted of offenses that carry a possible sentence of more than one year in prison (in Illinois, this means felonies) from possessing firearms. There is, however, a safety valve in the federal law's definition of a "conviction." A conviction does not count for the purposes of federal law when the law in the relevant jurisdiction (Illinois) has restored Evans's civil rights to him. The State concedes that Illinois has done so.

¶ 5         But that federal safety valve comes with a caveat. It does not apply if State law places an affirmative impediment on accessing the FOID card. This returns us to Illinois law, and Illinois law, like the federal law, prohibits firearm possession by persons convicted of felonies. 720 ILCS 5/24-1.1(a) (West 2018). Again, there is a safety valve—a felon can petition the director of ISP for relief from the possessory disability imposed by his or her felony conviction. *Id.* So far so good, except the safety valve conceals a fatal design flaw, namely, the reliance on the same four-factor test applied in the FOID Card Act, which, as we said, prohibits the issuance of a FOID card if doing so would violate federal law.

¶ 6         Sound circular? It is.

¶ 7         So we are back at the beginning of an unending statutory loop. We cannot rewrite Illinois law. Unless the General Assembly sees fit to intervene and fix this ill-crafted statutory scheme, the federal prohibition on Evans's possession of a firearm functions as a barricade rather than a bridge, and Evans and others in the same circumstance will never be entitled to relief under section 10(c) of the FOID Card Act. 430 ILCS 65/10(c) (West 2018). We are obligated to affirm.

¶ 8         Background

¶ 9         Throughout Evans's late teens and early 20s, he had multiple contacts with police. In 1987, when he was 17, he was arrested (but not convicted) for battery and theft. Five years later, Evans was arrested three times. One arrest, for aggravated assault, did not lead to a conviction.

The other two arrests resulted in convictions for Class 2 felony possession of an unknown amount of an unknown controlled substance and Class X felony possession of more than 15 grams of a substance containing cocaine. The record shows that the court sentenced Evans to three years in the Department of Corrections for the Class 2 offense. The record does not show the sentence for the Class X offense. In 1993, while apparently on bond for the two drug cases, police arrested Evans for battery. Again, this charge did not lead to a conviction.

¶ 10        In a letter attached to his application for the FOID card, Evans says that he served four-and-one-half years of actual time in prison for two offenses—the State does not dispute that calculation, and nothing in the record indicates otherwise.

¶ 11        In 1999, Evans was arrested for various controlled substance offenses, none of those arrests ended in a conviction. Then in 2008, he was arrested for battery. That arrest, too, did not lead to a conviction. Evans has had no documented contact with police since then.

¶ 12        In January 2018, Evans applied to the ISP for a FOID card. His application admits his earlier felony convictions. The ISP denied his request by letter saying that his convictions prohibited his possessing firearms, which also triggered a prohibition against firearm possession under federal law. Evans petitioned the circuit court for review of the ISP's determination.

¶ 13        Evans attached several letters to his petition. His own letter, like his initial application, acknowledged his criminal convictions and explained that he was "hanging with the wrong crowd which led [him] to actively participate in illegal activities." His letter explained that he has been the owner of a "towing and transportation business since 2005."

¶ 14        Evans's wife, Rolonda, submitted a letter, confirming that Evans has been in the towing business since 2005. She described Evans as "family-oriented," pointing to his active role in raising their three children. She characterized Evans as a "workaholic" who, despite "some blemishes in his past *** tries his best to live right, pay it forward and give back to the community where he grew up."

¶ 15        Evans submitted letters from three more character witnesses. All acknowledged Evans's criminal history but described Evans as a changed man. Kristi Brown, from Catholic Charities, explained that Evans is "deeply involved in the community" and tries to "teach[ ] young men the benefits of staying free of the penal system, working a tax paying job and owning their own business." Dr. Althea Jones (Ed.D), a childhood friend, said that Evans had "changed his life tremendously" despite his "criminal past," though she did not provide specifics. Charlotte Hogan, Evans's sister, emphasized that Evans tries his best to be a role model for his children and, like Rolonda, described his commitment to his business.

¶ 16        The Cook County State's Attorney objected, primarily arguing that federal law barred the issuance of a FOID card due to Evans having been sentenced to over one year in prison. The state's attorney also argued that issuing the FOID card would be against the public interest because Evans's adult arrests "cast[ ] substantial doubt" that he has become a responsible person.

¶ 17        Evans, who had filed his initial petition *pro se*, retained counsel to file a response to the State's objection. Counsel, in one sentence, argued that issuing Evans a FOID card "is not contrary to federal law, and the FOID Card Act is unconstitutional as applied to him because it amounts to a perpetual firearm ban." Counsel cited no cases and made no argument to support that claim. Counsel also argued, citing a case from New Hampshire, that the circuit court could

order the ISP to issue a FOID card to Evans despite the provision of federal law barring him from possessing a firearm. Relying on the information in the letters attached to Evans's petition, counsel urged that issuing Evans a FOID card would not be contrary to the public interest.

¶ 18    The record does not reveal whether the trial court held a hearing, but it did enter a written order "sustain[ing] the State's Attorney's objections as to [Evans]'s being barred by [f]ederal statute from obtaining a FOID card and further sustains that [Evans] has not sustained his burden that issuing a FOID card would not be contrary to the public interest. Accordingly, [Evans]'s petition is denied."

¶ 19                                      Analysis

¶ 20    The statutory scheme allowing individuals to apply for a FOID card starts off easy enough to follow. Any person in Illinois interested in getting a FOID card applies to the ISP. 430 ILCS 65/4 (West 2018). The ISP can deny an application under several criteria. *Id.* § 8. Relevant here, the ISP can deny an application if the applicant has been "convicted of a felony under the laws of this or any other jurisdiction" or if a person is "prohibited from acquiring or possessing firearms *** by any Illinois State statute or by federal law." *Id.* § 8(c), (n). If the ISP denies a FOID card application, the applicant can appeal to the director of the ISP. *Id.* § 10(a). This is true unless the applicant has been convicted of any number of criminal offenses—here, a violation of the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2018))— in which case the applicant can petition the circuit court for relief. 430 ILCS 65/10(a) (West 2018).

¶ 21    The state's attorney for the relevant county may object, and the trial court considers the petition and the objection in determining "whether substantial justice has been done." *Id.* § 10(b). If the court determines that substantial justice has not been done, it must order the ISP to issue a FOID card unless the applicant is otherwise prohibited from possessing firearms under federal law. *Id.*

¶ 22    Because the Criminal Code of 2012 (see 720 ILCS 5/24-1.1 (West 2018) (felon in possession)) prohibits the applicant from possessing a firearm, the circuit court may only grant relief to an applicant if it is satisfied that:

> "(1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a [FOID] Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction;
>
> (2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his [or her] reputation are such that the applicant will not be likely to act in a manner dangerous to public safety;
>
> (3) granting relief would not be contrary to the public interest; and
>
> (4) granting relief would not be contrary to federal law." 430 ILCS 65/10(c)(1)-(4) (West 2018).

Evans challenges only the first factor, and the State responds that the trial court properly denied relief because both the third and fourth factors have not been satisfied. Nobody disputes that Evans satisfies the second factor.

¶ 23                                    *Passage of Time*

¶ 24        Our inquiry is fairly simple as to Evans's argument about the age of his convictions. His criminal history shows a conviction for a Class X delivery of 15 or more grams of a substance containing cocaine on March 3, 1994. On the same date, he was convicted of Class 2 delivery of an unspecified amount of a controlled substance. Evans's criminal history reflects that he received a three-year sentence for the Class 2 offense but does not indicate a sentence for the Class X offense. There is no indication that either of these convictions count as "forcible felonies." See 720 ILCS 5/2-8 (West 2018) (defining the term). But, even if they did, Evans's convictions, in 1994, occurred over 20 years ago. See 430 ILCS 65/10(c)(1) (West 2018). As Evans correctly argues, subsection (c)(1) does not pose an obstacle.

¶ 25                                    *Public Interest*

¶ 26        We disagree with both the State and the trial court that issuing Evans a FOID card would be contrary to the public interest. The State argues that we review this factor deferentially, limiting our review to deciding whether the trial court's determination was against the manifest weight of the evidence. But, one of the cases the State cites for this proposition says that review of "[w]hether [a] plaintiff is entitled to relief under section 10 of the FOID [Card] Act presents an issue of statutory construction" reviewed *de novo*. *Baumgartner v. Greene County State's Attorney's Office*, 2016 IL App (4th) 150035, ¶ 25. *Baumgartner* did not distinguish between the subsections of section 10, and we see no need to either. We find *de novo* review particularly appropriate for three reasons: (i) only documentary evidence was introduced, so credibility does not play a role; (ii) the State did not challenge the legitimacy of the documentary evidence or present contrary evidence, which it could have done; and (iii) nothing in the record suggests, contrary to the State's assertion (unsupported by any record citation), that the circuit court conducted an evidentiary hearing. We would also find that the trial court's conclusion on this factor was against the manifest weight of the evidence, were we to apply that standard.

¶ 27        Reviewing the public interest factor *de novo*, we cannot agree that issuing Evans a FOID card should be regarded as contrary to the public interest. The only point the State makes in support of affirming the trial court focuses on Evans's past arrests and convictions. We acknowledge those, and while we agree with their seriousness, nothing suggests the involvement of violence. Of greater import, the State fails to account for the immense progress Evans has made since 2008, nor does it explain why his now 25-year-old criminal history and his life since should overshadow the person he has become. It is uncontradicted that Evans has a stable family life—his wife of many years wrote of her husband's active role in raising their three children. It is also uncontradicted that Evans has a viable business which he runs.

¶ 28        Additionally, Evans's letters to the circuit court do not attempt to reassign blame or hide his criminal history. He openly admitted his convictions on his FOID card application and the letter attached to his petition acknowledges his errant past and expresses a desire to be better going forward. Evans has taken responsibility for the poor choices he made years ago and asks only that proper account be taken of the good choices he makes now. We find that granting him a FOID card would not be contrary to the public interest.

¶ 29                                    *Federal Law*

¶ 30        We arrive at the final, and most daunting, aspect of our analysis: determining whether federal law prevents Evans from possessing a firearm. As we explained, the federal Gun

Control Act of 1968 (Gun Control Act) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year *** to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1) (2018). Evans was convicted of two drug offenses, one a Class 2 offense and the other a Class X offense. At the time, Class 2 offenses were punishable by a prison term of 3 to 7 years (730 ILCS 5/5-8-1(a)(5) (West 1994)) and Class X offenses were punishable by a prison term of 6 to 30 years (*id.* § 5-8-1(a)(3)). His convictions, therefore, bring him within the federal prohibition.

¶ 31    The Gun Control Act's definition section, however, places limits on what counts as a "conviction." Specifically, the Act provides that

"a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter." 18 U.S.C. § 921(a)(20) (2018).

Apparently, Evans's convictions have not been expunged or set aside, and he has not received a pardon. We must determine, then, whether Evans has had his "civil rights restored" for the purposes of section 921(a)(20). *Id.*

¶ 32    The leading case in Illinois on this question is *Coram v. State*, 2013 IL 113867 (plurality opinion). Coram had been convicted of domestic battery and applied for a FOID card 17 years later. *Id.* ¶¶ 5, 8. Federal law prevented (and prevents) persons convicted of misdemeanor offenses of domestic violence from possessing FOID cards. 18 U.S.C. § 922(g)(9) (2018). The circuit court found section 922(g)(9) unconstitutional. *Coram*, 2013 IL 113867, ¶ 18. A three-justice plurality of our supreme court rejected the circuit court's constitutional holding but found that "Coram ha[d] a remedy, and Illinois a procedure, which entitle[d] him to relief/exemption from the disabling effect of section 922(g)(9)." *Id.* ¶ 56. The plurality questioned, but accepted, the United States Supreme Court's decision in *Logan v. United States*, 552 U.S. 23, 28 (2007), which held that the relevant "civil rights" for the purposes section 921(a)(20) were "the rights to vote, hold office, and serve on a jury," and as long as those rights had been restored, federal law no longer acted as a prohibition on possession of firearms. See *Coram*, 2013 IL 113867, ¶ 73 ("we acknowledge the binding precedent of cases like *Logan*, and abide by the principle of automatic restoration of firearm rights upon the restoration of unrelated rights").

¶ 33    We note that *Coram* has attracted considerable scrutiny in several appellate court decisions. See *Willis v. Macon County State's Attorney*, 2016 IL App (4th) 150480, ¶ 19 (collecting cases from all five appellate districts). Some courts have ruled that *Coram* does not apply to a FOID card applicant who, like Evans, applied after the FOID Card Act's 2013 amendment. *Id.* (citing *People v. Frederick*, 2015 IL App (2d) 140540, ¶¶ 22-23). Other courts have ruled *Coram* to be nonbinding because its analysis only garnered the support of a plurality of justices. *Id.* (collecting cases).

¶ 34    Several courts have combined *Coram*'s concurrence and dissent to prohibit the circuit court from "removing" the federal firearm disability. See *Baumgartner*, 2016 IL App (4th) 150035, ¶¶ 31-33 (collecting cases). This is an odd conclusion, given that Congress expressly left to State law the task of defining a "conviction" for the purposes of the federal gun laws. See 18 U.S.C. § 921(a)(20) (2018) ("What constitutes a conviction of such a crime shall be determined

in accordance with the law *of the jurisdiction in which the proceedings were held*." (Emphasis added.)). In other words, if Evans gets relief from the ISP and his prohibition on possession of firearms removed, he, indeed, would fall within the "civil rights restored" safety valve discussed by the lead opinion in *Coram*. We have no occasion to offer our own opinion on the precedential value of the *Coram* plurality because the State concedes that Evans has had his civil rights restored under section 921(a)(20).

¶ 35    The State argues, instead, that Evans comes within an exception to the federal safety valve. The final clause of section 921(a)(20) provides that a person convicted of a felony can possess a firearm if his or her civil rights have been restored "*unless* such pardon, expungement, or restoration of civil rights expressly provides that the person may not *** possess *** firearms." (Emphasis added.) 18 U.S.C. § 921(a)(20) (2018). The State argues, correctly, that Illinois law places an affirmative bar on the possession of firearms by those convicted of felonies. 720 ILCS 5/24-1.1(a) (West 2018). This means that, although Evans had his civil rights restored as contemplated by the federal Gun Control Act, an affirmative provision in Illinois law prevents him from possessing firearms.

¶ 36    It would appear that all is not lost, however. The same section that prohibits possession of firearms by felons provides a mechanism by which to restore the right. *Id.* ("This Section shall not apply if the person has been granted relief by the Director of the Department of State Police under Section 10 of the [FOID] Card Act."). But, this only brings us back to where we started— possession of a firearm must be legal under federal law to give relief under section 10 of the FOID Card Act. 430 ILCS 65/10 (West 2018).

¶ 37    And so petitioners, like Evans, are stuck on a statutory merry-go-round without a way off. Evans can apply for a FOID card. To successfully do so, he must meet the four conditions in section 10(c) of the FOID Card Act (*id.* § 10(c)), including a determination that his possession of a firearm would not violate federal law. Federal law prohibits possession of firearms by felons, and Evans is a felon. But, Evans's conviction will not count as a "conviction" under federal law if his civil rights have been restored. Under the plurality in *Coram*, and given the State's concession, Evans's civil rights are automatically restored on the completion of his sentences for his criminal convictions; he could be issued a firearm unless, again under federal law, an affirmative provision bars his possession of a firearm. In Illinois, it is illegal for felons to possess firearms—an affirmative provision preventing the restoration of Evans's right to do so. But, he can be given relief from that prohibition if he satisfies the four factors in section 10 of the FOID Card Act. One of those four factors is determining whether his possession of a firearm would violate federal law. And so we have arrived back where we started.

¶ 38    We cannot imagine this is the result the General Assembly intended. When we construe statutes we are supposed to give effect to legislative intent by giving the words in those statutes their ordinary meaning and considering the overall structure of the statutory scheme. *E.g.*, *People v. Conick*, 232 Ill. 2d 132, 138 (2008). The FOID Card Act contemplates the possibility that those convicted of criminal offenses—even some of Illinois's more serious offenses— should have a legitimate opportunity to seek the restoration of their right to possess a firearm. 430 ILCS 65/10(a) (West 2018). The Criminal Code of 2012, by its plain language, contemplates the real possibility of relief from the ban on possessing firearms for those convicted of felonies. 720 ILCS 5/24-1.1(a) (West 2018). Taking the General Assembly at its word(s), we cannot conclude that it intended to indefinitely deprive persons convicted of felonies from possessing firearms without an opportunity to assess individual circumstances.

¶ 39    Potentially serious constitutional concerns arise with the way the statutory scheme operates. This concern is not so much with the second amendment, as it seems likely that the General Assembly could permanently deprive convicted felons of the right to possess firearms without running afoul of existing Supreme Court precedent. See *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"); see also, *e.g.*, *People v. Burns*, 2015 IL 117387, ¶¶ 28-29.

¶ 40    We are far more troubled that Evans's predicament may violate his procedural due process rights. See *In re Robert S.*, 213 Ill. 2d 30, 49 (2004) (three factors to procedural due process claim are (i) private interest affected by official action, (ii) risk of erroneous deprivation of that interest through current procedures used, and (iii) value of any additional or substitute safeguards). Here, the private interest involved is substantial—the General Assembly has provided a statutory right to seek the reinstatement of a constitutional right. The risk of erroneous depravation using the current procedures appears not merely high, but guaranteed. The value of substitute safeguards is also high—by allowing the ISP to take a more pragmatic approach to removing the felon disability, either the ISP or the circuit court can then take a similarly holistic approach to evaluating the wisdom of issuing a FOID card to a given individual. But, we cannot develop this theory further because Evans is *pro se* and has not presented these arguments to us. We must, therefore, affirm.

¶ 41    How, then, did we get here? The simplest explanation, it seems, is a lag in statutory amendments. Before 2013, section 10 of the FOID Card Act only had three requirements: (i) the applicant did not have a conviction for a forcible felony within the previous 20 years, (ii) the applicant would not be likely to act in a manner dangerous to public safety, and (iii) issuing a FOID card would not be contrary to the public interest. See Pub. Act 97-1131 (eff. Jan. 1, 2013) (amending 430 ILCS 65/10(c)). Thus, even though the ISP could still deny a FOID card for an applicant's felon status under federal law (see 430 ILCS 65/8(n) (West 2018)), before 2013, there was the possibility for meaningful relief. A person convicted of a felony could have his or her "civil rights restored" by completing his or her sentence and seeking relief under section 24-1.1(a) of the Criminal Code of 2012. 720 ILCS 5/24-1.1(a) (West 2012). The circuit court would then have been permitted to do a more individualized, holistic evaluation of the person's fitness to possess a FOID card under the three requirements in section 10 of the FOID Card Act.

¶ 42    Whether or not the General Assembly intends a felony conviction to create a permanent bar on gun possession, it should work to make its intent clearer. If it does intend a permanent bar, it should expressly say so either in the FOID Card Act or the Criminal Code of 2012 (or both). If it does not intend a permanent bar, it should amend section 24-1.1(a) of the Criminal Code of 2012 to allow the director of the ISP to consider more individualized factors when granting or denying relief under that section. Unless and until the General Assembly takes action, the current statutory scheme operates as a *de facto* permanent ban on the possession of firearms by persons convicted of felonies because they will never have their federal possessory disability removed. As we have set out, given the current statutory structure, we do not perceive that result to be the legislative intent. Our role does not include divining unexpressed legislative intent; we must follow statutes as written. Doing so requires us to affirm.

¶ 43       Affirmed.

¶ 44       JUSTICE PIERCE, specially concurring:

¶ 45       I concur in the judgment only.