**2021 IL 125513**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125513)

ALFRED EVANS JR., Appellant, v. THE COOK COUNTY
STATE'S ATTORNEY *et al.*, Appellees.

*Opinion filed September 2, 2021.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis and Overstreet concurred in the judgment and opinion.

Justice Carter dissented, with opinion, joined by Justices Garman and Neville.

**OPINION**

¶ 1    Petitioner, Alfred Evans Jr., applied to the Illinois State Police (ISP) for a Firearm Owner's Identification (FOID) card. The ISP denied the request, and

petitioner filed a petition for review with the Cook County circuit court. The Cook County State's Attorney objected to the petition, and the circuit court sustained the objections. The circuit court found that federal law barred petitioner from obtaining a FOID card and that petitioner had not met his burden of showing that issuing him a FOID card would not be contrary to the public interest. The Appellate Court, First District, affirmed. 2019 IL App (1st) 182488. The court disagreed with the circuit court that issuing petitioner a FOID card would be contrary to the public interest. *Id.* ¶¶ 26-28. The court held, however, that petitioner was barred from obtaining a FOID card because federal law prohibited him from possessing a firearm. *Id.* ¶¶ 30-42. The court believed that petitioner was caught in a statutory loop between state and federal law that prohibited him from obtaining a FOID card. *Id.* ¶ 37.

¶ 2 We allowed petitioner's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Oct. 1, 2019).

¶ 3 BACKGROUND

¶ 4 In March 1994, petitioner was convicted of Class 2 felony manufacture or delivery of a controlled substance and Class X felony manufacture or delivery of more than 15 grams of cocaine. He was sentenced to three years in the Department of Corrections for the Class 2 offense. The sentence for the Class X offense does not appear in the record. In addition, defendant's criminal history shows numerous contacts with the police that did not result in convictions. In 1987, he was arrested for battery and theft. In 1992, he was arrested for aggravated assault. 1n 1993, he was arrested for battery. In 1999, he was arrested for various controlled substance offenses, and in 2008 he was arrested for battery.

¶ 5 In January 2018, petitioner applied to the ISP for a FOID card. The ISP denied the application, explaining in a letter that he was ineligible because of his felony convictions. In Illinois, felons are prohibited from owning firearms pursuant to section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2018)).

¶ 6 Petitioner then filed a *pro se* complaint in the circuit court to have his firearm rights restored pursuant to section 10(c) of the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/10(c) (West 2018)). In petitioner's complaint,

- 2 -

he stated that he was not contesting the validity of his past infractions. However, he noted that his felony convictions were more than 20 years in the past.

¶ 7 Section 10(c) provides a mechanism for the restoration of firearm rights. That section provides as follows:

"(c) Any person prohibited from possessing a firearm under Sections 24-1.1 or 24-3.1 of the Criminal Code of 2012 or acquiring a Firearm Owner's Identification Card under Section 8 of this Act may apply to the Director of State Police or petition the circuit court in the county where the petitioner resides, whichever is applicable in accordance with subsection (a) of this Section, requesting relief from such prohibition and the Director or court may grant such relief if it is established by the applicant to the court's or Director's satisfaction that:

(0.05) when in the circuit court, the State's Attorney has been served with a written copy of the petition at least 30 days before any such hearing in the circuit court and at the hearing the State's Attorney was afforded an opportunity to present evidence and object to the petition;

(1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a Firearm Owner's Identification Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction;

(2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety;

(3) granting relief would not be contrary to the public interest; and

(4) granting relief would not be contrary to federal law." *Id.*

¶ 8 The Cook County State's Attorney filed an objection to the petition. See *id.* § 10(b). The State's Attorney objected on two grounds. First, the State's Attorney argued that petitioner was prohibited from owning a firearm under federal law. Section 10(c)(4) of the FOID Card Act provides that relief should not be granted

when it would be contrary to federal law (*id.* § 10(c)(4)), and section 10(b) provides that the court shall not issue an order to grant the petitioner a FOID card if the petitioner is "otherwise prohibited from obtaining, possessing, or using a firearm under federal law" (*id.* § 10(b)). Section 922(g)(1) of the Federal Gun Control Act of 1968 (Gun Control Act) prohibits an individual from possessing a firearm when that person "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1) (2018). Alternatively, the State's Attorney argued that, if the court determined that petitioner was not prohibited from possessing a firearm under federal law, then it should find that granting petitioner relief would not be in the public interest. The State's Attorney focused on petitioner's criminal history. While acknowledging that petitioner's felony convictions were not for "forcible felonies," the State's Attorney contended that they showed a decided contempt for the law. The State's Attorney pointed out that petitioner was arrested on other charges after he was released from prison. The State's Attorney conceded that petitioner has had no documented contacts with the police for the past 10 years but argued that his adult transgressions and criminal history cast substantial doubt on whether he is an honest individual with a responsible and mature nature.

¶ 9 Petitioner retained counsel to file a response to the State's Attorney's objections. Counsel argued that granting relief would not be contrary to federal law. According to counsel, the references to federal law in sections 10(b) and 10(c)(4) meant "a disqualifying offense based on Federal Law and not a prohibition." Counsel also cited a New Hampshire case, *DuPont v. Nashua Police Department*, 113 A.3d 239 (N.H. 2015). In that case, the Supreme Court of New Hampshire noted that a conviction for which a person has had his civil rights restored is not considered a conviction for purposes of the federal firearms ban. *Id.* at 244 (citing 18 U.S.C. § 921(a)(20) (2012)). The court concluded that, for purposes of this section, the second amendment right to keep and bear arms is a civil right. *Id.* at 247. Accordingly, when the petitioner in that case had his right to possess firearms restored under state law, he was not barred from possessing a firearm under section 922(g)(1). *Id.* at 248-50.

¶ 10 Counsel also argued that granting petitioner a FOID card would not be contrary to the public interest. Counsel noted that petitioner's felony convictions were not for forcible felonies. Counsel argued that petitioner has turned his life around and

that his last arrest was more than 10 years ago. He pointed out that petitioner has been working as a tow truck operator for over 10 years and has worked with the City of Chicago and the Chicago Police Department. Because towing vehicles often results in irate motorists, petitioner wants a firearm for protection. He claimed to have been threatened with bodily harm over 100 times in the past 10 years.

¶ 11 Petitioner supported his petition with four character references, and he also supplied his own statement in which he took responsibility for his past mistakes and argued that he had transformed himself into a productive individual who is not a threat to society. Petitioner's wife explained in a letter that her husband has been operating his own towing business since 2005. She acknowledged the "blemishes in his past" but explained that he is now a changed man. She argued that he has paid his debt to society and is now an upstanding and trustworthy citizen. Dr. Althea Jones explained in her letter that she has known petitioner since childhood. She said that petitioner is not a person to create danger or put others in harm's way. She believed that petitioner has changed his life tremendously. Kristi Brown, of Catholic Charities, wrote that she has been petitioner's friend for 37 years. She believed that his criminal history was the result of the poor choices he made as a young man. She said that he has since become a responsible person and has been free from criminality for over two decades. Brown explained that petitioner is now an upstanding member of the community who gives back by teaching young men the value of staying free of the penal system, working a tax-paying job, and owning a business. Finally, petitioner's sister, Charlotte Hogan, wrote that petitioner was a hardworking, trustworthy individual who owns his own towing business. She said that he works long hours and is an upstanding and reliable person. She is confident in his ability to discern right from wrong, and she said that he is always willing to lend a helping hand. He is a good family man and strives to set a positive example for his children. She was confident in petitioner's ability to possess and handle firearms.

¶ 12 The trial court set the matter for a hearing, but the record does not disclose what happened at the hearing. There is no transcript, and petitioner did not prepare a bystander's report. The trial court entered a written order sustaining the State's objections to the petition. The court agreed with the State's Attorney that petitioner is barred by federal law from obtaining a FOID card. The court further found that

petitioner had not sustained his burden of showing that issuing a FOID card to him would not be contrary to the public interest.

¶ 13 Petitioner appealed, and the Appellate Court, First District, affirmed. 2019 IL App (1st) 182488. The court disagreed with the trial court that granting petitioner a FOID card would be contrary to the public interest. The court first considered the appropriate standard of review when a trial court determines whether a petitioner is entitled to relief under section 10(c)(3) of the FOID Card Act. The court rejected the State's argument that manifest weight review applied. *Id.* ¶ 26. The court noted that the Fourth District in *Baumgartner v. Greene County State's Attorney's Office*, 2016 IL App (4th) 150035, ¶ 25, held that *de novo* review applies to section 10 determinations. 2019 IL App (1st) 182488, ¶ 26. The court explained that "*Baumgartner* did not distinguish between the subsections of section 10, and we see no need to either." *Id.* The court went on to explain that it found *de novo* review appropriate for three additional reasons: (1) only documentary evidence was considered, (2) the State did not present contrary evidence or challenge the legitimacy of petitioner's evidence, and (3) nothing in the record suggested that the court held an evidentiary hearing. *Id.*

¶ 14 The court then held that the trial court erred in finding that granting petitioner a FOID card would be contrary to the public interest. The court noted that the only thing the State had raised in opposition to the petition was petitioner's criminal history. *Id.* ¶ 27. That history, however, was now 25 years old and consisted of nonviolent offenses. *Id.* Moreover, the State had failed to account for the strides petitioner has made or the person he has become. *Id.* The court noted that it was uncontradicted that petitioner has a stable family life and runs a viable business. *Id.* Finally, petitioner had taken responsibility for his past actions and had not tried to reassign blame for them. *Id.* ¶ 28. The court noted that it would have reached the same conclusion even if it had applied manifest weight review. *Id.* ¶ 26.

¶ 15 Nevertheless, the appellate court affirmed the trial court's decision because it determined that petitioner was caught in an "unending statutory loop" that prevented people in his situation from ever obtaining a FOID card. *Id.* ¶ 7. The appellate court described the problem as follows. The ISP can deny an application for a FOID card if, *inter alia*, the applicant has been convicted of a felony in any jurisdiction or if the applicant is prohibited from acquiring or possessing firearms

under Illinois or federal law. 430 ILCS 65/8(c), (n) (West 2018). If the ISP denies a FOID card application, the applicant may appeal to the Director of State Police (Director), unless he has been convicted of certain enumerated offenses, in which case the applicant may petition the circuit court for relief. *Id.* § 10(a). Here, petitioner's violations of the Illinois Controlled Substances Act (570 ILCS 570/100 (West 2018)) required him to petition the circuit court. 2019 IL App (1st) 182488, ¶ 20; see 430 ILCS 65/10(a) (West 2018). The State's Attorney may object to the petition, and the trial court then considers whether "substantial justice has been done." 430 ILCS 65/10(b) (West 2018). If the court determines that it has not, then it must order the ISP to issue a FOID card unless the applicant is "otherwise prohibited from obtaining, possessing, or using a firearm under federal law." *Id.* The section 10(c) factors govern whether the circuit court may grant relief, and one of the factors that a petitioner must demonstrate is that "granting relief would not be contrary to federal law." See *id.* § 10(c)(4).

¶ 16     Petitioner was prohibited from possessing a firearm under section 922(g)(1) of the Gun Control Act (18 U.S.C. § 922(g)(1) (2018)) because his convictions were for crimes that were punishable by more than one year of imprisonment. 2019 IL App (1st) 182488, ¶ 30. The Gun Control Act, however, limits what is considered a conviction:

> "a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter ***." 18 U.S.C. § 921(a)(20) (2018).

Petitioner's convictions had not been expunged or set aside, and he has not received a pardon, so the appellate court considered whether his civil rights had been restored. The court noted that in *Logan v. United States*, 552 U.S. 23, 28 (2007), the United States Supreme Court held that the relevant civil rights for purposes of section 921(a)(20) are the rights to vote, serve on a jury, and hold office. 2019 IL App (1st) 182488, ¶ 32. The State conceded that petitioner's civil rights had been restored within the meaning of this section. *Id.* ¶ 34.

¶ 17     The State argued, nevertheless, that petitioner fell within an exception. Section 921(a)(20) provides that a person whose civil rights had been restored may possess

a firearm "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not *** possess *** firearms." 18 U.S.C. § 921(a)(20) (2018). Petitioner's civil rights had been restored by operation of law, but Illinois places a ban on the possession of firearms by convicted felons. 720 ILCS 5/24-1.1(a) (West 2018). That section, however, does "not apply if the person has been granted relief by the Director of the Department of State Police under Section 10 of the Firearm Owners Identification Card Act." *Id.* But this brings the petitioner back to where he started. To obtain relief under section 10, he must demonstrate that granting relief would not be contrary to federal law. 430 ILCS 65/10(c)(4) (West 2018).

¶ 18    The appellate court did not believe that this "statutory merry-go-round" was what the legislature intended, as the FOID Card Act contemplates that convicted felons should have a legitimate opportunity to seek the restoration of their firearm rights. 2019 IL App (1st) 182488, ¶¶ 37-38. The court believed, however, that it was required to adopt an interpretation contrary to legislative intent because that is where the plain language of the statute led it. *Id.* ¶¶ 38, 42. The court also believed that its construction raised "serious constitutional concerns." *Id.* ¶ 39. The court was concerned that its interpretation could deprive people in petitioner's situation of their procedural due process rights. *Id.* ¶ 40. The court believed that its interpretation guaranteed an erroneous deprivation of the private interests intended to be safeguarded by section 10. *Id.* Nevertheless, the court held that it could not develop this theory further because petitioner had not argued it. *Id.* The court thus concluded that the current statutory scheme operated as a permanent ban on the possession of firearms by convicted felons. *Id.* ¶ 42.

¶ 19    We allowed petitioner's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019). Following oral argument, we retained jurisdiction of the case but remanded it to the circuit court for the limited purpose of setting forth its reasoning in finding that the petitioner did not sustain his burden of showing that issuing him a FOID card would not be contrary to the public interest.

¶ 20    The circuit court entered a written order explaining why it found that petitioner had not met his burden. The court began by recounting defendant's criminal history and noted that the State had objected to the FOID card application due to petitioner's adult transgressions and criminal history. The court explained that it

had considered the character references petitioner submitted but found them lacking because they failed to address the responsibilities inherent in firearm ownership. The court found that the letters were devoid of fact-specific reasons why the authors believed petitioner would be able to satisfy the significant responsibilities that he would have if granted a FOID card. The court found this significant because "each of the authors clearly knew that their letters were being submitted for the very purpose of supporting Mr. Evans's FOID application, which could lead to the ownership of a potentially deadly weapon." The court noted that petitioner's wife did not even mention gun ownership and that the three other character witnesses offered only general assurances that petitioner is able to discern right from wrong. However, they did not provide sufficient information about their interactions with petitioner or how often these interactions occurred.

¶ 21　　Next, the court noted that petitioner apparently wanted the FOID card so that he could conceal a loaded weapon in his vehicle and use it for protection in his employment. The court explained that even if petitioner were granted a FOID card it would not be permissible for him to transport a loaded weapon or carry a firearm in a concealed manner unless he separately obtained a concealed carry license.

¶ 22　　The court further found petitioner's submissions to be defective for the following reasons: (1) petitioner failed to offer any evidence about the circumstances of either of his two felony convictions, (2) petitioner did not offer specifics as to how he would be able to carry out the significant responsibilities of owning a firearm, and (3) petitioner's felony convictions were for drug offenses but petitioner failed to explain whether he had been addicted to drugs and, if so, whether he had received drug treatment. The court found the third reason to be particularly significant because it would have allowed the court to understand the genesis of petitioner's underlying criminal conduct and could have "provided a basis for it to conclude that Mr. Evans could be responsible to own and operate a firearm consistent with the public interest."

¶ 23　　The court further noted that, although petitioner had filed his initial complaint *pro se*, he had at all other times been represented by highly competent counsel. The court explained that it would have expeditiously conducted an evidentiary hearing had one been requested. However, rather than request an evidentiary hearing, petitioner elected to stand on his problematic submissions.

¶ 24    The court summed up as follows:

"This Court was favorably impressed that Mr. Evans has clearly made great strides in his life and that information was taken into consideration. Further, this Court fully recognized that Mr. Evans' convictions were not 'forcible felonies' and Mr. Evans' multiple felony charges, spanning over 20 years, the last of which was approximately 10 years ago, did not result in any convictions. However, this Court concluded, based upon Mr. Evans' criminal history and the clearly deficient submissions that failed to address the issue of Mr. Evans' potential gun ownership, that there was insufficient evidence to find that it would not be contrary to the public interest to award Mr. Evans a FOID card."

¶ 25                              ANALYSIS

¶ 26                             Federal Law

¶ 27    We consider first whether granting petitioner a FOID card would be contrary to federal law. This requires that we determine if the appellate court was correct that state and federal statutes create a loop that prevents Illinois felons from ever having their firearms rights restored. Resolving this question is a matter of statutory interpretation, and the principles that guide our analysis are familiar. The primary objective of statutory construction is to ascertain and give effect to the legislature's intent. All other canons and rules of statutory construction are subordinate to this principle. *People v. Casler*, 2020 IL 125117, ¶ 24. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. *Id.* The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.* Statutes must be construed to avoid absurd or unjust results. *People v. Hanna*, 207 Ill. 2d 486, 498 (2003). When a plain or literal reading of a statute leads to absurd results or results that the legislature could not have intended, courts are not bound to that construction, and the literal reading should yield. *Id.* Issues requiring statutory interpretation are questions of law subject to *de novo* review. *People v. Manning*, 2018 IL 122081, ¶ 16.

¶ 28    After the appellate court issued its decision, this court decided *Johnson v. Department of State Police*, 2020 IL 124213. Although the issue in *Johnson* was slightly different, it is sufficiently similar that we deem *Johnson* controlling. In *Johnson*, the petitioner had her FOID card revoked because of a conviction for a misdemeanor crime involving domestic violence. *Id.* ¶ 1. Section 8(n) of the FOID Card Act provides that a ground for denial or revocation of a FOID card is that a person "is prohibited from acquiring or possessing firearms or firearm ammunition by any Illinois State statute or by federal law." 430 ILCS 65/8(n) (West 2018). And section 922(g)(9) of the federal Gun Control Act prohibits the shipping, transport, possession, and receipt of firearms and ammunition by any person "who has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9) (2006). The petitioner petitioned to have her firearm rights restored pursuant to section 10 of the FOID Card Act. Following a hearing, the circuit court determined that the petitioner had satisfied the requirements of section 10(c)(1)-(3) but that she was prohibited from obtaining a FOID card under section 10(c)(4) because of her federal disability. *Johnson*, 2020 IL 124213, ¶ 9. The circuit court then declared section 922(g)(9) of the Gun Control Act and sections 8(n), 10(b), and 10(c)(4) of the FOID Card Act (430 ILCS 65/8(n), 10(b), 10(c) (West 2018)) unconstitutional as applied to the petitioner and ordered the Director of State Police to reissue her a FOID card. *Johnson*, 2020 IL 124213, ¶ 10.

¶ 29    The Department of State Police appealed directly to this court. Citing the principle of constitutional avoidance, this court first considered the petitioner's argument that a proper construction of state and federal statutes led to the conclusion that the federal prohibition no longer applied to her. *Id.* ¶¶ 12-13. This court noted that it was undisputed that the petitioner had satisfied the first three criteria of section 10(c) (see 430 ILCS 65/10(c)(1)-(3) (West 2018)), thus leaving as the only question whether the petitioner had established that granting her relief would not be contrary to federal law (see *id.* § 10(c)(4)). *Johnson*, 2020 IL 124213, ¶ 19. As noted above, section 922(g)(9) of the Gun Control Act bars a person from possessing firearms if that person has a misdemeanor conviction of a crime involving domestic violence. See 18 U.S.C. § 922(g)(9) (2006). However, the Gun Control Act places a limit on what is considered a conviction:

"A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is

- 11 -

an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Id.* § 921(a)(33)(B)(ii).

This court noted that the petitioner had not received a pardon, nor had her conviction been expunged or set aside. Accordingly, she could obtain relief only if her civil rights had been restored within the meaning of section 921(a)(33)(B)(ii). *Johnson*, 2020 IL 124213, ¶ 24.

¶ 30        This court, citing *Logan*, 552 U.S. at 28, explained that the relevant civil rights under section 921(a)(33)(B)(ii) had historically been considered the rights to vote, hold office, and serve on a jury. *Johnson*, 2020 IL 124213, ¶ 28. The petitioner never lost any of these civil rights because her conviction was for a misdemeanor and she had not been sentenced to confinement. *Id.* ¶ 29. This court, however, held that a limited "three rights" view was not sustainable after *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and that firearms rights should be considered "civil rights" within the meaning of section 921(a)(33)(B)(ii). *Johnson*, 2020 IL 124213, ¶ 30. This court reached that conclusion for three reasons. First, the plain and ordinary meaning of the term "civil rights" would include firearms rights because "civil rights" include " 'the rights secured to citizens of the U.S. by the *** 14th amendment[ ] to the constitution.' " *Id.* ¶ 37 (quoting Webster's Third New International Dictionary 413 (1993)). Second, the statutory language supported that conclusion. This court noted that the phrase "civil rights restored" appears alongside the words " ' "expunged," "set aside," and "pardoned." ' " *Id.* ¶ 39 (quoting *Logan*, 552 U.S. at 32). The Supreme Court in *Logan* explained that these terms describe " 'a measure by which the government relieves an offender of some or all of the consequences of his conviction.' " *Id.* (quoting *Logan*, 552 U.S. at 32). This court noted that restoration of firearms rights under section 10(c)(1)-(3) "similarly relieves an offender of some of the consequences of a conviction and extends a measure of forgiveness by finding *** that the offender no longer poses a risk to public safety." *Id.* ¶ 40. Finally, interpreting "civil rights" as including firearms rights is consistent with the statute's purpose because a "state regulatory scheme that restores a person's eligibility for firearm rights by affirmatively and expressly evaluating that person's

future dangerousness *** is entirely consistent with the trustworthiness rationale that underpins the 'civil rights restored' provision." *Id.* ¶ 41. This court explained that ignoring the "express and measured finding under a section 10 hearing that an individual no longer poses a risk to public safety would frustrate the very legislative purpose underlying the federal statute." *Id.* ¶ 43.

¶ 31        This court noted that the "civil rights restored" exemption has been interpreted to apply only to someone who lost civil rights in the first place. *Id.* ¶¶ 45-46. This court determined that the petitioner met that test. She lost her eligibility to obtain a FOID card and thus her right to possess firearms because of her misdemeanor domestic violence conviction. *Id.* ¶ 47. And, as part of her sentence, she was statutorily required to " 'refrain from possessing a firearm or other dangerous weapon.' " *Id.* (quoting 730 ILCS 5/5-6-3(a)(3) (West 2000)). She then had her rights restored pursuant to Illinois's regulatory scheme, which the court referred to as section 10(c)(1)-(3). *Id.* This court noted that its holding was consistent with the New Hampshire Supreme Court's decision in *DuPont*. *Id.* ¶¶ 38, 49. The *DuPont* court held that firearms rights are civil rights under the federal Gun Control Act and that, when the only civil right that a person lost following a conviction was the right to keep and bear arms but that right was restored under state law, that person has had his civil rights restored for purposes of section 921(a)(20). *DuPont*, 113 A.2d at 247-49. Because the petitioner had satisfied her burden under section 10(c)(1)-(3), granting her relief would not be contrary to federal law under section 10(c)(4). *Johnson*, 2020 IL 124213, ¶ 51.

¶ 32        Although the firearm disability in the present case arose under a different subsection of the Gun Control Act, the *Johnson* analysis applies equally here. Like the petitioner in *Johnson*, petitioner here was prohibited from possessing firearms under federal law. However, petitioner's ban arose from his having been convicted of a crime punishable by a term of imprisonment exceeding one year rather than from a misdemeanor conviction for a crime of domestic violence. 18 U.S.C. § 922(g)(1) (2018). Just as with the statutory provision in *Johnson*, federal law limits what is considered a conviction:

"[A] conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has

- 13 -

had civil rights restored shall not be considered a conviction for purposes of this chapter ***." *Id.* § 921(a)(20).

Here, the State conceded that petitioner's rights to vote, hold office, and serve on a jury have been restored by operation of law. And, pursuant to *Johnson*, firearm rights are "civil rights." Petitioner lost those rights, but as *Johnson* holds, Illinois provides a mechanism to restore those rights. *Johnson*, 2020 IL 124213, ¶ 47. If petitioner can satisfy the criteria of section 10(c)(1)-(3), then he would have his civil right to own a firearm restored.[1]

¶ 33    The appellate court noted that that "civil rights restored" provision of section 921(a)(20) comes with an exception. A felon may possess a firearm if his civil rights have been restored "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not *** possess *** firearms." 18 U.S.C. § 921(a)(20) (2018). Illinois places an affirmative ban on felons possessing firearms. See 720 ILCS 5/24-1.1(a) (West 2018). However, it does not apply if the person has been granted relief under section 10 of the FOID Card Act.[2] *Id.* The appellate court believed that this trapped people in petitioner's position in a never-ending statutory loop because this just takes them right back to where they started—possession of a firearm must be legal under federal law to grant relief under section 10. The State points out that this result can be avoided by construing the reference to granting "relief under Section 10 of the [FOID] Card Act" as meaning granting relief under section 10(c)(1)-(3). We agree, as this is consistent with what we held in *Johnson*. The mechanism for restoring firearms rights is contained in section 10(c)(1)-(3). See *Johnson*, 2020 IL 124213, ¶¶ 27, 40, 47. Thus, if a petitioner can

---

[1]The First District concluded in an unpublished order that its analysis in the present case did not survive *Johnson* and that a felon who can establish that he meets the criteria of section 10(c)(1)-(3) would then be eligible for relief from the prohibition of firearms of the felon-in-possession statute. If he made that showing, he would be eligible to have his civil rights restored in a way that no longer prohibits the possession of firearms, he would no longer have a qualifying "conviction" that prohibits the possession of firearms under federal law, and he could be granted relief in such a way that would not be contrary to federal law. *Cheatem v. Cook County State's Attorney's Office*, 2020 IL App (1st) 191896-U, ¶ 33.

[2]Section 24-1.1(a) says that it "shall not apply if the person has been granted relief by the *Director of the Department of State Police* under Section 10 of the [FOID Card] Act." (Emphasis added.) 720 ILCS 5/24-1.1(a) (West 2018). However, people like petitioner who have committed certain enumerated felonies obtain relief from the circuit court rather than the Director. The State has not argued that the above language is a limitation on the statute's applicability and concedes that the statute would apply to someone who obtains relief from the circuit court.

establish that he meets the criteria of section 10(c)(1)-(3), section 24-1.1(a) would no longer bar him from possessing firearms. At that point, he would no longer have a qualifying conviction prohibiting his possession of firearms under federal law, so he could be granted relief from his firearm disability in a way that was not "contrary to federal law" under section 10(c)(4).

¶ 34    Of course, this does not mean that he could not be disqualified under federal law for some other reason. As petitioner correctly notes, a proper reading of section 10(c)(4) assumes that petitioner's right to relief under section 10(c)(1)-(3) has been established and then asks the court to consider whether the petitioner would be in violation of federal law for some *other* reason. This reading is consistent with section 10(b), which provides that, if the court determines in a section 10 hearing that substantial justice has not been done, it should direct the ISP to issue a FOID card unless the petitioner "is *otherwise* prohibited from obtaining, possessing, or using [a firearm] under federal law." (Emphasis added.) 430 ILCS 65/10(b) (West 2018). Here, the State has not argued that petitioner is prohibited by federal law from possessing a firearm for any other reason.

¶ 35    The appellate court believed that, if the plain language of the statutes led it to the conclusion that felons are permanently barred from obtaining relief from their firearm disabilities, then it had no choice but to adopt that construction, even if it was contrary to the legislature's intent and raised serious procedural due process concerns. 2019 IL App (1st) 182488, ¶¶ 38-42. As we explained earlier, however, the primary objective of statutory construction is to ascertain and give effect to the legislature's intent. *Casler*, 2020 IL 125117, ¶ 24. All other rules of statutory construction are subordinate to this principle (*id.*), and when a plain or literal reading of the statute leads to absurd results or results that the legislature could not have intended, courts are not bound to that construction, and the literal reading should yield (*Hanna*, 207 Ill. 2d at 498). The legislature clearly intended for felons to be able to obtain relief under section 10 of the FOID Card Act. Section 24-1.1(a)'s prohibition on the possession of weapons by felons says that it does not apply if the person has been granted relief under section 10 of the FOID Card Act. We do not believe that the legislature's intent was to create such a right and then make it impossible for anyone to obtain relief.

¶ 36                                    Public Interest

¶ 37        We next consider whether the trial court erred in finding that petitioner had
failed to meet his burden of demonstrating that granting him a FOID card would
not be contrary to the public interest. The parties disagree over the proper standard
of review. As noted above, the appellate court held that *de novo* review was proper
for four reasons: (1) In *Baumgartner*, the Fourth District held that *de novo* review
applied to section 10 determinations and did not distinguish between the various
subsections of section 10(c) (*Baumgartner*, 2016 IL App (4th) 150035, ¶ 25[3]);
(2) the court considered only documentary evidence; (3) the State did not present
any evidence to contradict petitioner's evidence and did not challenge the
legitimacy of petitioner's evidence; and (4) the record did not indicate that the court
held an evidentiary hearing. 2016 IL App (1st) 182488, ¶ 26. Petitioner echoes this
reasoning.

¶ 38        The State argues instead that this court should apply the manifest weight
standard. The State contends that manifest weight review would be appropriate if
the trial court held an evidentiary hearing but agrees with petitioner that *de novo*
review would apply if the court considered only documentary evidence. See, *e.g.*,
*Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). The State notes that the
record fails to disclose whether the court held an evidentiary hearing. Accordingly,
pursuant to *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984), the State contends that
we should hold the incompleteness of the record against petitioner, presume that
the court held an evidentiary hearing, and apply manifest weight review. However,
were we to presume that an evidentiary hearing occurred but that we lacked a
transcript of the hearing, *Foutch* dictates that we would simply presume that the
trial court's order was in conformity with the law and had a sufficient factual basis.
*Id.* But we now know that there was no evidentiary hearing because the trial court
confirmed this in its supplemental order on remand. The court stated that it would
have expeditiously conducted an evidentiary hearing had petitioner requested one.
The parties would thus seem to be in agreement that, because the trial court

---

[3]We note, however, that in *Baumgartner*, the court explained that it was merely resolving an
issue of statutory construction. *Baumgartner*, 2016 IL App (4th) 150035, ¶ 25.

considered only documentary evidence, *de novo* review is appropriate. We disagree.

¶ 39    In arguing for *de novo* review, the parties and the appellate court fail to appreciate the burden of proof set forth in the statute. The legislature provided that a petitioner must establish the section 10(c) factors "*to the court's or Director's satisfaction.*" (Emphasis added.) 430 ILCS 65/10(c) (West 2018). By choosing this language, the legislature has clearly afforded discretion to the Director or circuit court. By contrast, section 10(f), which applies to people under firearm disabilities pursuant to 18 U.S.C. § 922(d)(4) or (g)(4) because of an adjudication of commitment under state law, provides that the applicant may petition the Department of State Police for relief from the prohibition and that the Director shall grant relief if "it is established *by a preponderance of the evidence* that the person will not be likely to act in a manner dangerous to public safety and that granting relief would not be contrary to the public interest." (Emphasis added.) 430 ILCS 65/10(f) (West 2018). We are not free to ignore the different language the legislature used in these two subsections. See *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 28 (where legislature uses certain language in one instance and wholly different language in another, settled rules of statutory construction require us to assume different meanings or results were intended).

¶ 40    A reviewing court obviously cannot review *de novo* whether a petitioner has established the factors "to the court's or Director's satisfaction." When applying *de novo* review, the appellate court determined that petitioner had established the public interest factor to *the appellate court's* satisfaction. See 2019 IL App (1st) 182488, ¶ 27 ("we cannot agree that issuing Evans a FOID card should be regarded as contrary to the public interest"); *id.* ¶ 28 ("We find that granting him a FOID card would not be contrary to the public interest."). But the language the legislature has chosen plainly does not permit a reviewing court simply to substitute its judgment for that of the Director or circuit court.

¶ 41    Because the statute affords the Director or the circuit court discretion in determining whether a petitioner has met his or her burden of establishing the section 10(c) factors, we hold that the proper standard of review is abuse of discretion. An abuse of discretion occurs when a ruling is arbitrary, fanciful, or one

that no reasonable person would make. *People v. Gaines*, 2020 IL 125165, ¶ 45. That said, there may be times in determining whether a petitioner is entitled to section 10(c) relief—particularly when considering subsection (c)(4)—that the court is required to resolve an issue of statutory construction. That was the case with the first issue raised by the petitioner in *Baumgartner* (see *Baumgartner*, 2016 IL App (4th) 150035, ¶¶ 23-33), the issue in *Johnson* (see *Johnson*, 2020 IL 124213, ¶ 13), and with the issue we resolved above. On those specific issues, as with all issues of statutory construction, *de novo* review is appropriate. *Id.* Here, however, the question is whether petitioner met his burden of demonstrating to the circuit court's satisfaction that granting him a FOID card would not be contrary to the public interest. On this question, the legislature has clearly vested the circuit court with discretion, and therefore we will review the trial court's decision for an abuse of discretion.

¶ 42    Despite this court having remanded the case to the trial court for the express purpose of having it set forth its reasoning in finding that petitioner did not meet his burden on the public interest factor—delaying resolution of the appeal by several months—the dissent now contends (*infra* ¶¶ 63-64) that we should ignore the very order we requested and employ *de novo* review instead. See *e.g.*, *People v. McDonald*, 2016 IL 118882, ¶ 32 (*De novo* review is "completely independent of the trial court's decision. Under the *de novo* standard, the reviewing court performs the same analysis that the trial court would perform."); *Masters v. Murphy*, 2020 IL App (1st) 190908, ¶ 9 (*de novo* review is "without regard to the trial court's reasoning"). In arguing for *de novo* review based on documentary evidence, however, the dissent merely cites the general rule from *Addison Insurance Co.*, a case not involving the unique burden of proof of " 'to the court's *** satisfaction.' " See *infra* ¶ 58. That rule, however, is based on the trial court being in no superior position than a reviewing court to make findings when only documentary evidence is received. *Addison Insurance Co.*, 232 Ill. 2d at 453. Here, however, the legislature has specifically placed the circuit court in a superior position. The legislature requires that the petitioner prove his case "to the court's *** satisfaction." The dissent does not explain how a court could review *de novo* whether a petitioner has established the section 10(c) factors to the circuit court's satisfaction. None of the dissent's cited cases involve this unique burden of proof, and therefore the dissent's assertion that our decision calls into question a century's worth of case law (*infra* ¶ 64) is obviously not correct.

¶ 43    Applying the abuse of discretion standard, we cannot find that the trial court's ruling was arbitrary, fanciful, or one that no reasonable person would make. Certainly, it is possible for a reasonable person to disagree with the circuit court's conclusion. Two members of the appellate court said that they would have granted relief based solely on the petition and letters of recommendation from petitioner's wife, sister, and two of his friends. 2019 IL App (1st) 182488, ¶¶ 26-28. Moreover, it is possible to quibble with some of the circuit court's reasoning. For instance, the court explained that petitioner wanted to conceal the weapon in his vehicle but would need a concealed carry license to do so. But the fact that petitioner would need to get a separate license to carry a firearm as intended would not seem to be a reason that granting him a FOID card would be contrary to the public interest.

¶ 44    Overall, however, the circuit court gave a thoughtful, detailed response explaining why petitioner had not convinced it that granting petitioner a FOID card would not be contrary to the public interest. Basically, the court found that petitioner had not provided enough information. The court noted that petitioner's criminal history involved drug-related felonies, and the court wanted to know the details of those offenses, the extent of any history that petitioner had with drugs, and whether he had received treatment. The court also wanted to hear specifics from petitioner as to how he would be able to carry out the significant responsibilities of firearm ownership. The court also wanted more evidence from the people who provided petitioner with very brief character references. The court wanted to know more about the nature of their interactions with petitioner and how often such interactions occurred. The court also wanted them to address the significant responsibilities of firearm ownership and why they believed petitioner would be able to satisfy those responsibilities. Significantly, these are precisely the kinds of questions that could have been answered at an evidentiary hearing where petitioner and his character references were called to testify. The court stated that it would have expeditiously conducted an evidentiary hearing if petitioner had requested one. But not only did petitioner's counsel fail to request such a hearing, petitioner did not personally appear when the court considered his petition. Clearly, the court's decision to deny the petition in these circumstances was not arbitrary, fanciful, or one that no reasonable person would make.

¶ 45    The dissent contends that, rather than reviewing the trial court's findings for an abuse of discretion, this court should remand the case to the trial court and order it

to hold an evidentiary hearing. Indeed, the dissent contends that it would be "unfair" not to do so. *Infra* ¶ 63. According to the dissent, once the petitioner learned the *reasons* that the court found that he did not prove his case, he immediately became entitled to an evidentiary hearing to have a second chance to prove the case he failed to prove the first time. *Infra* ¶ 56. The dissent cites nothing in the statute—or indeed anywhere in Illinois law—in support of this proposition. Assume that the trial court *had* included all of its reasoning in its original order. Would petitioner have been entitled to a second bite of the apple upon receiving the trial court's order? If not, then there is no reason why he would be entitled to one now, simply because the trial court set forth its reasoning upon remand from this court.

¶ 46    The dissent claims that the petitioner will not learn of the importance of an evidentiary hearing until this opinion is issued. *Infra* ¶ 63. However, the trial court never said that an evidentiary hearing was necessary. The court detailed the evidence that petitioner had provided, explained why it found it lacking, and then noted that petitioner did not request an evidentiary hearing but rather elected to stand on his problematic submissions. But the court never said, or even implied, that it would have denied the petition if petitioner had not submitted problematic evidence in the first place. What *was* a necessity was that petitioner prove his case to the circuit court's satisfaction, and this petitioner failed to do, either through adequate documentary submissions or an evidentiary hearing.

¶ 47    The dissent also contends, in a *non sequitur*, that this court's setting forth the proper standard of review for the first time means that petitioner is entitled to an evidentiary hearing. According to the dissent, this court "routinely remands for further proceedings when, as here, we announce a new standard of review or clarify a disputed legal framework." *Infra* ¶ 65. The dissent cites three cases for this proposition. None of the cases, however, involve this court remanding to the trial court solely because we announced a new standard of *appellate review*. Those cases involved remands because something about *circuit court procedure* was changed or clarified. See *West Bend Mutual Insurance Co. v. TRRS Corp.*, 2020 IL 124690, ¶ 41 (circuit court cannot rely on the primary jurisdiction doctrine to stay an administrative proceeding in the Illinois Workers' Compensation Commission); *People v. Gawlak*, 2019 IL 123182, ¶ 43 ("Because there was confusion on the nature of a section 116-3 action in the circuit court and Brodsky's intentions about the scope of his representation of defendant are in dispute, we believe a remand for

further proceedings and clarification is warranted."); *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶¶ 51-52 (declining to *abandon* abuse of discretion standard of review and clarifying that, when a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)) presents a fact-dependent challenge to a final judgment or order, the standards from *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986), govern those proceedings; court sets forth what factual allegations must be pleaded, the appropriate burden of proof in the trial court, when an evidentiary hearing is required, and when the trial court may take into account equitable considerations). Here, nothing about circuit court procedure has changed. Petitioner's burden was always to establish the section 10(c) factors to the circuit court's satisfaction. The dissent has offered nothing in support of its contention that every time this court announces or clarifies a *standard of appellate review* a party is entitled to a new *circuit court proceeding*.

¶ 48 Finally, in response to the dissent's assertion that petitioner is being treated unfairly by this court (*infra* ¶ 63), we reiterate that petitioner failed to present this court with either a transcript or a bystander's report of the hearing on his petition. Indeed, this court was unable to discern from the record whether an evidentiary hearing had been held. In these circumstances, this court would have been well within its right to do what Illinois courts of review typically do in such a situation: construe the incompleteness of the record against the appellant and simply presume that the trial court's order was in conformity with the law and had a sufficient factual basis. See *Foutch*, 99 Ill. 2d at 392 (applying this principle and concluding that, without a transcript of the hearing on a motion to vacate, there was no basis for concluding that the court abused its discretion in denying the motion). Instead, this court elected to review petitioner's argument and, to facilitate our review, remanded the case to the circuit court to set forth its reasons for denying the petition. This remand was necessitated by petitioner's failure to supply this court with a complete record. The dissent notes that the original record did not contain any of the trial court's reasoning. *Infra* ¶ 63. Again, though, *petitioner failed to present this court with a transcript of the hearing or a bystander's report.* For all we know, the circuit court stated all of these things in open court when it denied the petition. In other words, what the dissent argues here is that electing to address petitioner's argument and remanding to the circuit court is not enough. This court should additionally construe the incompleteness of the record *in appellant's favor*, presume that the trial court did not state any of its reasons for denying the petition

until it issued its supplementary order on remand, and then use that presumption as a reason to grant petitioner a supplementary evidentiary hearing that no other section 10(c) petitioner is entitled to. It is difficult to imagine a greater inversion of the *Foutch* principles than what the dissent proposes here. Granting petitioner an evidentiary hearing now would be unfair to every other section 10(c) petitioner whose petition was denied and who was not then granted a supplementary evidentiary hearing to address the reasons the court found his or her evidence lacking.

¶ 49 While there is no basis for granting petitioner an evidentiary hearing, we see nothing in the statute that would preclude petitioner from filing another petition to remove his firearm disability. Three years have now passed since petitioner filed his last petition, and assuming he has had no further infractions, his criminal history is now an additional three years in the past. Moreover, petitioner now knows why his previous submissions were found lacking, and he will be able to use this information to bolster his submissions in a subsequent petition.

¶ 50 CONCLUSION

¶ 51 We disagree with the appellate court that state and federal statutes create a loop that prevents felons from ever obtaining a firearm. If a convicted felon can establish the requirements of section 10(c)(1)-(3), he may be granted relief in a way that is not contrary to federal law. Here, however, petitioner failed to meet his burden of establishing to the circuit court's satisfaction that granting him relief would not be contrary to the public interest. We hold that the trial court did not abuse its discretion in reaching that conclusion, and we therefore affirm the appellate court's judgment.

¶ 52 Affirmed.

¶ 53 JUSTICE CARTER, dissenting:

¶ 54 I agree with the majority's analysis of the primary issue—the interplay between federal and state law for purposes of obtaining an Illinois FOID card by an

individual with a prior felony conviction. Specifically, I believe the majority correctly concludes that the "legislature clearly intended for felons to be able to obtain relief" in appropriate circumstances pursuant to section 10 of the FOID Card Act (430 ILCS 65/10 (West 2018)). *Supra* ¶ 35. I do not agree, however, with the majority's resolution of the second issue in this case—whether the circuit court erred in finding that Evans failed to meet his burden of demonstrating that granting him a FOID card would not be contrary to the public interest for purposes of relief under section 10(c) of the FOID Card Act (430 ILCS 65/10(c) (West 2018)). *Supra* ¶¶ 43-44.

¶ 55       In my opinion, this court should not address the merits of the second issue given the unusual development of this case. I believe we should remand the matter to the circuit court to allow Evans, if he chooses, to request an evidentiary hearing to address the shortcomings identified by that court in its supplemental order, issued at this court's direction after briefing and argument here.

¶ 56       Effectively, the majority has created a new framework for appellate review of section 10(c) proceedings. The majority also affirms the circuit court's denial of Evans's petition under this new standard on the basis of a supplemental order that neither party has been able to address. *Supra* ¶¶ 39-44. Under these circumstances, I respectfully believe fundamental fairness warrants remanding this matter to the circuit court for further proceedings. On remand, Evans should be provided an opportunity to address the concerns identified by the majority in this case. For these reasons, I dissent.

¶ 57       The majority holds that the abuse of discretion standard applies to the review of the circuit court's decision of whether a petitioner has met the burden of establishing the section 10(c) factors, regardless of the nature of the evidence considered by the circuit court. *Supra* ¶ 41. The abuse of discretion standard has been described as "the most deferential standard of review—next to no review at all." *In re D.T.*, 212 Ill. 2d 347, 356 (2004). No other published decision has ever applied that standard to a section 10(c) proceeding, and neither party here advocated for its adoption. See *supra* ¶¶ 37-38 (majority rejecting the *de novo* standard of review applied by the appellate court and advocated by the parties).

¶ 58       Illinois courts of review have recognized the general principle that the standard of appellate review is dependent on the nature of the evidence considered by the

circuit court. Our decisions consistently hold that a circuit court's findings should be reviewed under a manifest weight of the evidence standard when that court considered live witness testimony but that a circuit court's findings are subject to *de novo* review when that court considered only documentary evidence. See, *e.g.*, *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). In relevant part, *de novo* review is uniformly applied in a variety of contexts when the circuit court considered only documentary evidence. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 16; *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 12; *Russell v. SNFA*, 2013 IL 113909, ¶ 28; *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 573 (2009); *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007); *In re Estate of Funk*, 221 Ill. 2d 30, 35 (2006).

¶ 59        This distinction has been recognized by this court for over a century. See *State Bank of Clinton v. Barnett*, 250 Ill. 2d 312, 315 (1911) (*de novo* review applies when the trier of fact had "no better means of judging the relative candor, fairness and credibility of the respective witnesses than [the reviewing court]"). Recently, we unanimously reaffirmed the reasoning for this rule of appellate review:

"Without having heard live testimony, the trial court [is] in no superior position than any reviewing court to making findings, and so a more deferential standard of review is not warranted. Thus, although this court has not done so recently, we reiterate that where the evidence before a trial court consists of depositions, transcripts, or evidence otherwise documentary in nature, a reviewing court is not bound by the trial court's findings and may review the record *de novo*." *Addison Insurance Co.*, 232 Ill. 2d at 453.

¶ 60        Here, it is undisputed that there was no evidentiary hearing and, therefore, the circuit court considered only documentary evidence, suggesting that *de novo* review should apply under this court's jurisprudence. In fact, the parties and the appellate court agreed on *de novo* review in those circumstances. The majority, however, decides to revisit this noncontested issue and depart from our settled jurisprudence. *Supra* ¶¶ 39-41.

¶ 61        According to the majority, "[i]n arguing for *de novo* review, the parties and the appellate court fail to appreciate the burden of proof set forth in the statute." *Supra* ¶ 39. The majority observes that the section 10(c) factors must be established "to the court's or Director's satisfaction" (430 ILCS 65/10(c) (West 2018)), which the

majority interprets as legislative intent to afford discretion to the Director or circuit court. *Supra* ¶ 39. Ultimately, the majority concludes that, "[b]ecause the statute affords the Director or the circuit court discretion in determining whether a petitioner has met his or her burden of establishing the section 10(c) factors, we hold that the proper standard of review is abuse of discretion." *Supra* ¶ 41.

¶ 62     After adopting the abuse of discretion standard, the majority focuses on the circuit court's statements from the supplemental order that refer to the lack of an evidentiary hearing in the original proceedings. The majority describes the circuit court's concerns in the supplemental order as "precisely the kinds of questions that could have been answered at an evidentiary hearing where petitioner and his character references were called to testify." *Supra* ¶ 44.  The majority criticizes Evans for failing to request an evidentiary hearing during the original proceeding and observes that the circuit court indicated in its supplemental order that it would have conducted an evidentiary hearing if Evans requested one. *Supra* ¶ 44.

¶ 63     The majority affirms the circuit court's judgment based on deficiencies first identified in the supplemental order, concluding that the circuit court did not abuse its discretion. *Supra* ¶ 44. The original record before this court on appeal, however, did not contain any explanation from the circuit court. Consequently, I believe Evans will not know why the circuit court denied his petition or the importance of an evidentiary hearing until this court issues this opinion. Similarly, I assume Evans could not have anticipated that this court would abandon our ordinary framework of appellate review in favor of the abuse of discretion standard for section 10(c) cases, even those that do not involve testimony or credibility determinations. With respect, this approach is unfair to Evans.

¶ 64     The majority's adoption of an abuse of discretion standard of review would be appropriate *if* the circuit court considered live testimony and was in a superior position to evaluate that testimony. *Addison Insurance Co.*, 232 Ill. 2d at 453. However, the majority's application of a deferential standard in this case, which involved only documentary evidence, is not consistent with our precedent. I fear that the majority's decision here calls into question the framework of appellate review followed by Illinois courts for over a century and reaffirmed in *Addison Insurance Co.* To be fair, the majority acknowledges our decision in *Addison Insurance Co.* but argues that decision is "merely" recognizing a "general rule."

*Supra* ¶ 42. The majority offers few justifications for departing from the general rule of appellate review and cites no authority to support its decision to abandon *de novo* review in a case involving only documentary evidence.

¶ 65       I also note that this court routinely remands for further proceedings when, as here, we announce a new standard of review or clarify a disputed legal framework. *West Bend Mutual Insurance Co. v. TRRS Corp.*, 2020 IL 124690 ¶ 44; *People v. Gawlak*, 2019 IL 123182, ¶ 43; *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶¶ 53-56. That approach is particularly suitable in this case for two reasons. First, the majority has adopted a new framework of appellate review for determining whether Evans has established the section 10(c) factors in a case that involves only documentary evidence. Second, the majority has determined that the new standard applies to a supplemental order from the circuit court that is not a part of the original record. Thus, neither party has had the opportunity to address or respond to the supplemental order.

¶ 66       I also contend that the majority misinterprets my position on remand. I do not suggest that this court should "ignore the very order we requested" directing the circuit court to provide a supplemental written explanation of its decision. *Supra* ¶ 42. To the contrary, the circuit court's supplemental order supports my position by confirming that it considered only documentary evidence and no live testimony. *Supra* ¶ 38.

¶ 67       The majority also states that I am claiming that "every time this court announces or clarifies a standard of appellate review a party is entitled to a new circuit court proceeding." (Emphases omitted.) *Supra* ¶ 47. My actual position is much narrower and limited to the situation here. I believe that fundamental fairness dictates that the affected party, Evans, be afforded the opportunity to respond to the supplemental order before it is subject to appellate review under the majority's framework. In this way, Evans will be given his day in court aware of the standards set out by the majority.

¶ 68       Contrary to the majority's assertions, my position is not an "inversion of the *Foutch* principles." *Supra* ¶ 48. Under *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984), a reviewing court may construe any deficiency in the record against the appellant and presume the circuit court's order was in conformity with the law and had a sufficient factual basis. Here, the State argued that the presumption from

*Foutch* should apply because "it cannot be determined from the record whether the circuit court heard live testimony or limited its review to documentary evidence." We now know, however, that the circuit court did not consider any live testimony at a hearing. This aspect of the case was also apparent to the appellate court. See 2019 IL App (1st) 182488, ¶ 26 (stating that "nothing in the record suggests, contrary to the State's assertion (unsupported by any record citation), that the circuit court conducted an evidentiary hearing"). Thus, as Evans argues in his reply brief, *Foutch* is simply inapplicable here. Evans cannot be faulted for failing to provide a transcript of an evidentiary hearing that did not occur.

¶ 69    In summary, I would reverse the appellate court's judgment upholding the circuit court's denial order and remand this matter to the circuit court for further proceedings. On remand, Evans should be afforded the opportunity to request an evidentiary hearing to address the circuit court's supplemental order, issued at this court's direction after briefing and argument. For these reasons, I respectfully dissent.

¶ 70    JUSTICES GARMAN and NEVILLE join in this dissent.