2024 IL App (2d) 240415-U
No. 2-24-0415
Order filed October 24, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-447 |
| TRISCAL MARCUS, | ) ) ) | Honorable David Paul Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err when it granted the State's petition for pretrial detention where the proffered evidence showed that defendant has repeatedly posed a risk to those with which he resides.

¶ 2   The defendant, Triscal Marcus, was charged with one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(ii) (West 2022), and one count of unlawful restraint (720 ILCS 5/10-3) (West 2022). The circuit court of Kane County granted the State's verified petition to deny defendant's pretrial release pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963

(Code) (725 ILCS 5/110-6.1 (West 2022)). Defendant appeals following the denial of his motion for relief filed pursuant to Illinois Supreme Court Rule 604(h)(2). We affirm.

¶ 3                                    BACKGROUND

¶ 4     On April 19, 2024, the trial court held a hearing on the State's verified petition to deny defendant's pretrial release pursuant to section 110-6.1 of the Code. (725 ILCS 5/110-6.1 (West 2022)). The State first proffered People's Exhibit 1, a copy of the North Aurora police synopsis, that read as follows:

"During a forensic interview on 7/7/2022, fifteen-year-old N.M. disclosed that her cousin's boyfriend, [defendant], put his hand under her shirt and squeezed her boobs while they were in the basement. N.M. explained that her cousin and [defendant] were living with her family, but were kicked out after a stabbing incident. [Defendant] came into the room wearing only a towel while N.M. was watching videos under the bed covers. [Defendant] pulled off the covers, reached under her shirt and squeezed her boobs. N.M. tried to make noise to wake her brother who was sleeping next to her. [Defendant] let go of N.M. who got back under the covers. [Defendant] told her that this was a secret between them and she should not tell anyone. On another occasion, [defendant] took N.M. into his room and tried to close the door while N.M. kept telling him no. He asked her if she had a boyfriend and if she had already done it with him. She stated she was able to get away from him."

The State next proffered People's Exhibit 2, a North Aurora police synopsis detailing a June 11, 2022, domestic battery incident between defendant and D.A. (Kane County Case No. 22-DV-349), that read as follows:

"Ofc D Parr *** was called to 216 B Linn Ct in reference to a domestic battery that had already occurred. Upon arrival I was directed to the victim in this case, [D.A.], in the

kitchen of the home, by the victim's aunt. The possible offender, live-in boyfriend, and father of her child, [defendant] *** [were] also present in the kitchen. Due to this, [D.A.] was asked to walk outside so that I could speak to her. Once outside, I noted that [D.A.] had a swollen black and blue left eye. Once [D.A.] pulled her mask down, I also noted that her right side of her chin was blue and purple. I asked [D.A.] how she got the injuries, and she stated that nothing happened. I told her I did not believe her and she stated to me that it was an accident, and once again I told her I didn't believe her, and asked if she wanted my help to which she replied no she did not.

I contacted Det K Lohrstorfer in an attempt to further speak to [D.A.]. Det Lohrstorfer arrived on scene and spoke to [D.A.]. [D.A.] told Det Lohrstorfer that she was trying to keep [defendant] from going outside, but he's strong. [D.A.] also stated that [defendant] did not do it on purpose, but his elbow hit her eye when they were in the bedroom. [D.A.] was asked by Det Lohrstorfer about her chin, and she stated that she did that to herself with some stuff in her room. [D.A.] then stated that she didn't know when her chin injury happened, and that [defendant's] elbow may of hit her chin as well and that she had a hard time remembering. Det Lohrstorfer's conversation with [D.A.] was audio and video recorded at this time on Det Lohrstorfer's work cell phone.

I then went into the home and spoke to [defendant]. I asked [defendant] what took place and he told me that [D.A] had accused him of cheating on her and she began to bang around the room and threw herself down, hitting a table. I told [defendant] that I did not believe him, and he stated that while [D.A.] was banging around, he hit her in the face with the back of his open hand. I told [defendant] that the bruise on her eye and chin was not from one backhand and he kept with his story and denied hitting her any further."

The State also proffered that defendant had a pending DUI case for which he failed to appear on August 25, 2022. A warrant for defendant's arrest had been outstanding since that date.

¶ 5    Defendant's counsel argued that defendant no longer resided with N.M. and, therefore, could not pose a danger to her. At the time of the hearing, defendant was residing in North Aurora with D.A., his wife. He further argued that two years had passed since the alleged incidents and defendant had not been arrested for any new crimes.

¶ 6    In granting the State's petition to detain, the trial court found, in relevant part, as follows:

"I do find that the defendant poses a real and present threat to the safety of specifically [D.A.] and the minor N.M. as well as anybody he appears to reside with.

I do note that both of these took place at the same location and I note that there was an unrelated stabbing incident there as well.

I am in no way inferring that [defendant] is responsible for that but I am concerned that there is additional serious violence that he is somehow connected with based on the statement both in the synopsis and to counsel that that is why he moved out.

I note that at the time of both of these offenses he was residing with his now-wife, [D.A.], and that they had a child at the time and that he preyed upon a child member of the home by entering her room uninvited and touching her in sexual manner.

Given that his violent and assaultive behavior is directed towards the people he resides with, I do not find that there are conditions of pretrial release that can mitigate the real and present threat that this defendant poses to the people he lives with and I find that there a no less-restrictive conditions that would avoid this real and present threat."

The trial court also noted that it considered defendant's failure to appear for the 2022 DUI charge in granting the State's petition to detain.

¶ 7    On June 26, 2024, defendant filed a motion for relief. Following a hearing, the trial court denied the motion. This appeal followed.

¶ 8                                    ANALYSIS

¶ 9    In Illinois, all persons charged with an offense are eligible for pretrial release. *Id.* §§ 110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq*. Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 10   Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)); (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

¶ 11   We review the trial court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Specifically, we review under the manifest-weight-of-the-evidence standard the trial court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks. *Id.* A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented. *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 12     In this appeal, the defendant argues that the State did not show clear and convincing evidence that (1) he poses a real and present threat to the safety of any person or the community; and (2) any purported threat could not be mitigated with conditions of relief. "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services,* 2023 IL 127712, ¶ 74.

¶ 13     As to his first argument, defendant avers that the State's proffer does not show that he presents and real and present danger. He argues that the police synopsis on the criminal sexual abuse of N.M. suggests no force was used when allegedly squeezing N.M.'s breasts, nor was there any threat of force. Additionally, defendant argues that there has been no contact between him and N.M. for two years, therefore he cannot pose an real and present threat to N.M.

¶ 14     In making a determination of a defendant's dangerousness, a trial court may consider, among other things: (1) the nature and circumstances of any charged offense, including whether it is a crime of violence or a sex crime, or involved a weapon; (2) the defendant's characteristics and history, including any criminal history indicative of violent, abusive, or assaultive behavior, and any psychological history indicative of a violent, abusive, or assaultive nature, and the lack of any such history; (3) the identity of the person believed to be at risk from the defendant and the nature of the threat; (4) statements by the defendant and the circumstances of such statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim or complaining witness; (7) the defendant's access to any weapon; (8) whether the defendant was on probation, parole, or the like at the time of the charged offense or any other arrest or offense; and (9) any other factors that have a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior, or the lack of such behavior. *Id.* § 110-6.1(g).

¶ 15    The trial court was presented with ample evidence regarding several of the factors enumerated above. People's Exhibit 1 detailed that defendant used force to grab the minor N.M.'s breasts, a sex offense. People's Exhibit 1 further detailed that defendant restrained N.M. in a room while making sexually charged comments. The identity of N.M. as the victim was well-established by the evidence. Defendant was 32 years old at the time of the charged conduct while the victim N.M. was, and still is, a minor. Finally, the trial court was presented with, and indeed considered, evidence that defendant has a propensity for violent, abusive, or assaultive behavior. People's Exhibit 2 detailed a domestic violence incident in which defendant caused injuries to D.A. Indeed, defendant admitted to police that he struck D.A.

¶ 16    Factual findings, such as a trial court's determination that a defendant posed a real and present threat to the safety of any person, are generally reviewed deferentially, and will not be reversed unless they are against the manifest weight of the evidence.[1] See *Indeck Energy Services, Inc. v. DePodesta,* 2021 IL 125733, ¶ 56. A finding is not against the manifest weight of the evidence unless the "opposite conclusion is clearly evident." *Id.* That standard is not met here. The evidence supports the finding of defendant's dangerousness to N.M. and D.A. under several of the factors enumerated in section 110-6.1(g). See 725 ILCS 5/110-6.1(g) (West 2022). The trial court's determination was not against the manifest weight of the evidence.

___

[1] Although there may be instances in which a trial court's factual findings are reviewed *de novo* because of the nature of the evidence presented (see *Addison Insurance Co. v. Fay,* 232 Ill. 2d 446, 453 (2009); but see *Evans v. Cook County State's Attorney,* 2021 IL 125513, ¶ 38), neither party contends that is the case here.

¶ 17    The defendant's final argument on appeal is that the trial court failed to adequately consider alternatives to pretrial detention that could have mitigated the danger he poses. Under section 110-6.1(g)(3) of the Code, an order for pretrial detention must be based on, among other things, clear and convincing evidence that "no condition or combination of conditions" of pretrial release can mitigate the real and present threat to safety posed by the defendant. *Id.* § 110-6.1(g). If the trial court finds that the State proved a valid threat to someone's safety or the community's safety, it must then determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community ***." *Id.* § 110-5(a). In making this determination, the trial court should consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and (5) the risk that the defendant will obstruct or attempt to obstruct the criminal justice process. *Id.* No single factor is dispositive. *Id.* As with the finding of dangerousness, we review the trial court's findings regarding whether the imposition of conditions on a defendant's pretrial release would mitigate the safety risk posed by the defendant under the manifest weight of the evidence standard. *Indeck Energy Services,* 2021 IL 125733, ¶ 56.

¶ 18    Here, the trial court considered the nature of the charged offenses and the strength of the evidence that the defendant committed those offenses. The trial court considered defendant's unwillingness to adhere to conditions of release through his failure to appear in court for the 2022 DUI charge, leading to an outstanding warrant for his arrest. As discussed above, People's Exhibits 1 and 2 established defendant's history of sexual abuse and domestic violence against those with which he shared a common residence. As the trial court's findings were based on the specific,

articulable facts of the evidence presented, we cannot conclude that its determination that no pretrial release conditions could adequately protect N.M. and D.A.'s safety was against the manifest weight of the evidence.

¶ 19 For all of these reasons, the trial court did not abuse its discretion by granting the State's motion for pretrial detention. The judgment of the circuit court of Kane County is affirmed.

¶ 20 Affirmed.